(No. 34623.—

THE PEOPLE *ex rel.* THE VILLAGE OF PARK FOREST *et al.,* Appellants, *vs.* P. J. CULLERTON, Assessor of Cook County, *et al.,* Appellees.

*Opinion filed May 21, 1958.*

WALLACE WYATT, of Chicago, for appellants.

BENJAMIN S. ADAMOWSKI, State's Attorney, of Chicago, (FRANCIS X. RILEY, and ROBERT W. SCHERMAN, of counsel,) for appellees.

Mr. JUSTICE DAILY delivered the opinion of the court:

Upon the failure of administrative efforts to bring about the back-taxing of a certain building for the year 1955, appellants, who are the village of Park Forest and Bernard G. Cunningham, the latter a resident of and taxpayer of the village, filed in the superior court of Cook County a petition for writ of *mandamus* against the county assessor and the board of appeals, the appellees in this court. By such action, which was based on the theory that the building had been omitted from assessment, appellants sought to force the assessor to assess the structure at its fair cash value as of April 1, 1955, or, in the alternative, to compel the board to direct the assessor to make the assessment. After a hearing, however, the court denied relief and dismissed the petition, expressly finding that the property had not in fact been omitted from assessment and that the assessor's honest judgment was conclusive in the absence of fraud. The revenue being involved, appellants have prosecuted a direct appeal to this court. *People ex rel. Jones v. Webb,* 256 Ill. 364; *People ex rel. Patton v. Sellars,* 179 Ill. 170.

The building in controversy, occupied by Marshall Field and Company, is one of several comprising a shopping center in the village of Park Forest and is identified in

the assessor's records as building No. 7. The shopping center occupies a tract of land containing 69.23 acres and such land is considered a single unit for assessment and taxation purposes. As to improvements, however, individual valuations are made for each building and the aggregate of the individual valuations constitutes the valuation of improvements on the tract. A building permit for the construction of building No. 7 had been issued to Field's on June 29, 1954, and although it is stipulated in the record that construction costs to April 1, 1955, were $600,000, such figure was not included in the aggregate valuation of improvements employed for 1955 taxes.

Building No. 7, it appears, has a main structure and an east wing, and consists of a basement, two floors and a penthouse for elevator machinery atop the main structure. On March 28, 1955, Field's occupied a portion of the main structure, the evidence being that they opened for business that day using only the basement and first floor. It is undisputed that the second floor of the main structure and the east wing were not then complete. Of the building's total floor space of 145,887 square feet, 73,744 square feet were in use on opening day.

A field representative for the assessor's office investigated the structure on April 27, 1955. His report bears the notation "pick up for 1956," indicating that the building was not to be assessed for 1955. The report does not state the reason for the investigator's conclusion but the assessor's chief deputy testified that the matter was discussed in the office, and that the decision was based on an office rule, adopted pursuant to authority given in the Revenue Act of 1939, (Ill. Rev. Stat. 1953, chap. 120, par. 494,) to the effect that industrial properties "less than 50% complete" as of April first in the taxable year were not to be assessed. According to the witness a technical file maintained in the assessor's office indicated that the east wing of the building, representing 25% of the total, was unfin-

ished; that the portion occupied by Field's, or 75% of the structure, was one-third unfinished on the second floor, which represented 25%; that the basement and first floor of the main structure were discounted by 15% of the 50% total they represented, or 7½%; and that, in such a manner, the assessor computed that 57.5% of the structure was unfinished and 42.5% finished.

Appellants construe the evidence as showing that the assessor "wholly failed to perform his duty to assess the building for 1955," and insist that the result has been a tax exemption which finds no justification either in the constitution or implementing statutes. The word "assess" is defined in Webster's New International Dictionary, 2d ed. as meaning: "To value; to make a valuation or official estimate of (property) for the purpose of taxation." Applying this common definition to the facts at hand makes it manifest that there was no failure of duty as claimed. The action of the assessor in omitting the value of building No. 7 from the aggregate value of improvements resulted from his application of the rule adopted relative to uncompleted improvements. It is our further opinion, however, that the rule has been misapplied in this case.

Stated in full the rule adopted and employed by the assessor is as follows: "I (a) Industrial properties determined at 50 per cent complete and not fully complete as of the first of April in the taxable year, shall be carried at 50 per cent final condition for the current year; if less than 50 per cent complete they shall not be assessed." In making his computation in this case, the assessor carried the basement and first floor of the main building as representing 50% of the entire structure and, although such portions were occupied and a business was being conducted therein, discounted them as being 7½% from final condition. Had such a discount not occurred, the record makes it clear that the building would have been subjected to 1955

taxes. The second floor of the main structure and the east wing were each computed to represent 25% of the total structure and, although the evidence shows substantial completion, the assessor's method of computing their condition treated them as being nonexistent and as having made no progress toward final condition. Apart from the settled law that tax regulations are to be construed in favor of taxation, simple consistency and justice require that if the property owner is to be given the advantage of a discount based upon the fact that the basement and first floor were 7½% short of final condition, it should likewise bear the burden of a percentage credit based upon the extent to which the second floor and east wing had progressed toward final condition. In other words, there has been an inconsistent application of the rule as between the basement and first floor on the one hand, and the second floor and east wing on the other. In the first instance cognizance was given to the fact that 42.5% of final condition had been reached; in the second instance the degree of completion was entirely ignored. It may be added too that the rule, as framed, anticipates the degree of completion of a structure as a whole, not its component parts. When a consistent application of the rule is made, it is manifest from the evidence that the structure was in fact in excess of 50% complete, although not fully complete, on April 1, 1955. Under the assessor's rule, therefore, it should have been carried at 50% final condition.

In reaching our conclusion we do not pass upon the question of whether the rule adopted by the assessor is reasonable and proper within the meaning of the Revenue Act, inasmuch as neither the pleadings nor the proof have raised such an issue in this case. While there appear to be conflicting views on the question of whether or not uncompleted improvements are to be valued, or considered as enhancing the value of land, (see: 84 C.J.S., Taxation,

sec. 411, p. 804,) we observe in passing that rules similar to the one here involved were given cognizance in *Lindheimer* v. *Nelson,* 369 Ill. 312, and *People ex rel. McDonough* v. *Marshall Field & Co.* 355 Ill. 633.

We have held that *mandamus* is the proper remedy to enforce the performance of statutory duties with respect to the assessment and collection of taxes, where such omission has been specifically directed to the attention of the authorities and a demand for affirmative action has been ignored. (See: *People ex rel. Jones* v. *Webb,* 256 Ill. 364; *People ex rel. Spiegel* v. *Lyons,* 1 Ill.2d 409.) Accordingly, and for the reasons stated, the judgment of the superior court is reversed and the cause is remanded to that court with instructions to issue the writ as prayed.

*Reversed and remanded, with directions.*