ROBERT K. HASEGAWA, Director of Labor and Industrial Relations of the State of Hawaii *v.* MAUI PINEAPPLE CO., LTD.

No. 4936.

OCTOBER 9, 1970.

RICHARDSON, C.J., MARUMOTO, ABE, LEVINSON AND KOBAYASHI, JJ.

SAME—*same—burden of proof.*

OPINION OF THE COURT BY LEVINSON, J.

This case involves the constitutionality, under both the Hawaii and United States Constitutions, of HRS § 388-32 which requires that every employer who employs more than 25 persons

. . . shall pay to each of his employees who serves on a jury or a public board compensation in an amount equal to the difference between the remuneration the employee receives for such service on a jury or a public board and the wages and any other remuneration he would have received from his employer had he not served on the jury or public board.

The appellant, Maui Pineapple Co., Ltd., having more than 25 persons in its employment, falls within the coverage of this statute. One Tsugio Nouchi, an employee of the appellant and also chairman of the Maui County Liquor Commission, a public board, attended a conference on behalf of the Liquor Commission held in Denver, Colorado during the period from June 3, 1968 to June 7, 1968. Nouchi submitted a claim to Maui Pineapple for $79.20 which he alleged was due to him under HRS § 388-32 as compensation for the services he rendered to the Liquor Commission in Denver during this period. The appellant refused payment and Nouchi assigned his claim to the appellee, the Hawaii Director of Labor and Industrial Relations, who filed the complaint in this action. The trial judge rendered his judgment in favor of the appellee, upholding the constitutionality of the statute. The appellant appeals arguing that the statute (1) violates the equal protection guarantees of the Hawaii and United States

Constitutions and (2) results in a taking of private property for public use without just compensation in violation of article I, section 18 of the Hawaii Constitution and the due process clause of the fourteenth amendment to the United States Constitution. We agree with the appellant's contentions.

## I. THE EQUAL PROTECTION CLAUSE

The guarantee of the equal protection of the laws, found in both the Hawaii and Federal Constitutions, was not intended to interfere with the power of the State to prescribe regulations to promote the general welfare of the people. Nor was it intended that the demand for equal protection require that all laws apply universally to all persons and that they never classify when imposing special burdens upon or granting special benefits to distinct groups.[1] It has been recognized that a state cannot function without classifying its citizens for various purposes and treating some differently from others. *Barbier* v. *Connolly,* 113 U.S. 27, 31 (1885); *State* v. *Johnston,* 51 Haw. 195, 202-03, 456 P.2d 805, 810 (1969). However, in exercising this right to classify in order to achieve social goals the legislature may not act arbitrarily; that is, the classification of a particular group as a subject for regulation must be reasonable in relation to the purpose of the legislation. As the Supreme Court stated in *Allied Stores of Ohio* v. *Bowers,* 358 U.S. 522, 527 (1959):

> [T]here is a point beyond which the State cannot go without violating the Equal Protection Clause. The State must proceed upon a rational basis and may not resort to a classification that is palpably arbitrary. The rule often has been stated to be that the classification "must rest upon some ground of difference having

[1] Tussman & tenBroek, *The Equal Protection of the Laws,* 37 Calif. L. Rev. 341, 343 (1949).

a fair and substantial relation to the object of the legislation."

Thus, one who questions the constitutionality of a statute on equal protection grounds has the burden of showing, with convincing clarity, that the challenged classification does not "rest upon some ground of difference having a fair and substantial relation to the object of the legislation." In ascertaining whether this burden has been met it is necessary for this court to follow a two-step procedure. First, we must ascertain the purpose or objective that the State sought to achieve in enacting HRS § 388-32. Second, we must examine the means chosen to accomplish that purpose, to determine whether the means bears a reasonable relationship to the purpose.[2]

### A. The Legislative Purpose to be Achieved in Enacting HRS § 388-32.

The legislative history of HRS § 388-32 indicates that the legislature was motivated toward two goals in passing the statute. First, there was a finding that the compensation paid by the State for service on juries and public boards and commissions was insufficient to prevent economic hardship falling on those workers who did not continue to receive wages from their private employers when called for public service. HRS § 388-32, it was felt, would eliminate this economic hardship by requiring employers to pay their employees any wages they may have lost as a result of service on a jury or a public board or commission.[3] Also in addition to preventing economic hardship it was hoped that HRS § 388-32 would encourage greater

2 See Note, *Rational Classification Problems in Financing State and Local Government*, 76 Yale L.J. 1206 (1967) and Tussman & tenBroek, *supra* note 1 for an extensive discussion of the use of reasonable classification analysis in resolving equal protection problems.

3 House Committee Report No. 645, 1965 House Journal 699-700; Senate Committee Report No. 361, 1965 Senate Journal 988.

participation in civic affairs on the part of wage earners.[4]

Increasing the civic responsibility of citizens and ensuring that those who serve their community do not suffer economic deprivation are undoubtedly goals which serve a high and benevolent purpose under our representative form of government. It is not the role of this court to debate the wisdom of these policies.[5] However, it is the duty of this court to see that the legislature does not seek to achieve noble ends by unconstitutionally arbitrary means. The statutory discrimination must be based upon differences that are reasonably related to the purpose of the law. *Morey* v. *Doud*, 354 U.S. 457, 465 (1957). Specifically, in the case at hand, we must ask what is the "ground of difference having a fair and substantial relation to the object" of this legislation which justifies the legislature in imposing on private employers this special burden of compensation? *Allied Stores of Ohio* v. *Bowers*, *supra* at 527.

B. *The Rational Relationship of the Statutory Classification to the Achievement of the Legislative Purpose.*

Appellant advances compelling reasons in support of its constitutional challenge to this statute. It argues that the functions performed by the jury system and public regulatory boards flow to the benefit of all of society and that neither it nor the class it represents receives any special benefit from these institutions. Absent a special benefit to this class of private employer, it contends, there is nothing in the nature of the employment relationship

---

[4] House Committee Report No. 645, *supra* note 3 at 699-700.

[5] Of course, this deference does not extend to legislative goals which are themselves constitutionally impermissible. Shapiro v. Thompson, 394 U.S. 618, 629 (1969). *See also Developments in the Law—Equal Protection*, 82 Harv. L.Rev. 1065, 1078 (1969).

that would reasonably justify the legislature's decision to place on private employers the obligation to pay their employees for services and time they furnish to the State's public commissions and juries. Appellee, in justifying the law as a proper exercise of the State's police power, relies principally on the Supreme Court decision in *Day-Brite Lighting Inc.* v. *Missouri,* 342 U.S. 421 (1952), which upheld the constitutionality of a Missouri statute making it a misdemeanor for any employer to deduct wages from an employee who absented himself from his place of employment to vote. However, we do not find that this case resolves the compelling equal protection problems raised by the appellant.

In the *Day-Brite* case the Missouri legislature had determined that employers as a class were using their power over their employees' wages to coerce them to vote as they directed. *Day-Brite Lighting Inc.* v. *Missouri, supra* at 421. In order to remedy this evil the statute prohibited employers from deducting wages while their employees absented themselves from work to vote. However, in the present case the purpose of HRS § 388-32 is not to prevent employer coercion of employees in the exercise of their franchise, but rather to ensure that those rendering services to the State receive adequate compensation. At issue is the reasonableness of the legislative decision as to who shall be called upon to pay this compensation.

Those furnishing their services to juries and public boards and commissions are, in effect, part-time public employees; yet in seeking to increase their compensation the state legislature did not assess the general public through apportioned taxation. Instead it chose to make a class distinction, imposing the economic cost of remuneration solely on private employers. The State has not demonstrated any special benefit to private employers that would justify this class distinction. Absent such a show-

ing there is no rational basis for singling out this one group from the general populace in seeking to achieve the legislative purpose of HRS § 388-32.

The general public acting through its elected representatives has assumed the financial and administrative responsibility of having juries and public boards and commissions. These public functions, like the provision of police and fire protection, benefit all who live in the community. The cost of a proper state function conducted for the public benefit cannot be arbitrarily charged to one class in the society. *Department of Mental Hygiene* v. *Kirchner*, 60 Cal. 2d 716, 36 Cal. Rptr. 488, 388 P.2d 720 (1964), *vacated and remanded*, 380 U.S. 194 (1965), *reaff'd* 62 Cal. 2d 586, 43 Cal. Rptr. 329, 400 P.2d 321 (1965). There is nothing in the position of private employers within our society which places them in a relationship to these public institutions different from the relationship of the general public to them. Therefore, we hold that by imposing liability for the cost of juries and public boards and commissions on private employers HRS § 388-32 works an invidious class distinction in violation of the equal protection clauses of both the Hawaii and Federal Constitutions.[6]

## II.  THE TAKING OF PRIVATE PROPERTY FOR A PUBLIC USE WITHOUT JUST COMPENSATION

The right of the State to exercise its police power and right of taxation in the public interest is limited by the constitutional principle that private property shall not

---

[6] Since we hold that private employers as a whole do not stand in a reasonable relationship to the purpose of the statute we need not consider the rationality of the statutory exemption afforded employers who employ less than 25 persons.

be taken for public use without just compensation.[7] In effect, this principle affords the same protection against unreasonable and arbitrary government action that is found in the equal protection clauses. Thus, although the police power permits the State to regulate the use of an individual's property in order to protect the public health, safety and welfare, such regulation has its limits. If it goes too far it will be recognized as a "taking" requiring the individual affected to receive just compensation. *Pennsylvania Coal Co.* v. *Mahon*, 260 U.S. 393, 415 (1922). We find that HRS § 388-32 goes beyond the mere regulation of property and amounts to taking within the meaning of article I, section 18 of the Hawaii Constitution.

In enacting HRS § 388-32 the legislature attempted to shift to private employers some of the cost of running the public enterprises of juries and public boards and commissions. In this case money, instead of realty, is being taken for a public use. However, we see no difference between the taking of money to pay public employees and the taking of realty to house government institutions. In both instances, the State is seeking to enhance the economic value of a government enterprise at the direct expense of a particular individual or group. This is precisely the kind of government "taking" which requires just compensation.[8]

Nor can this taking of private property be justified under the State's power of taxation. HRS § 388-32 is not a general tax measure. Consequently, if it is a proper

---

[7] Hawaii Constitution, article I, section 18. Amendment V of the United States Constitution imposes a similar limitation on the federal government. This principle of "just compensation" has also been held to be a due process requirement of the fourteenth amendment to the United States Constitution. Chicago, B. & Q.R.R. v. Chicago, 166 U.S. 226, 236 (1897). In addition, since the due process guarantee of the state constitution is at least as extensive as that of the Federal Constitution, a taking of property for public use without just compensation would violate article I, section 4 of the Hawaii Constitution.

[8] *See* Sax, *Takings and the Police Power*, 74 Yale L.J. 36, 67 (1964).

exercise of the taxing power it must be justified as a special assessment imposed on a particular group in society for a special benefit they have received. *City of Glendale* v. *Trondsen*, 48 Cal. 2d 93, 102, 308 P.2d 1, 6 (1957).[9] However, as we have seen, private employers receive no special benefit from the administration of public boards and commissions or the jury system. Therefore we hold that HRS § 388-32, not being justified under either the police power or taxing power of the State, amounts to a taking of private property for a public use without just compensation in violation of article I, sections 18 and 4 of the Hawaii Constitution and the fourteenth amendment of the United States Constitution.

Judgment reversed.

*Robert S. Katz* (*R. M. Torkildson* with him on the briefs; *Moore, Torkildson & Schulze* of counsel) for defendant-appellant.

*Alana W. Lau,* Deputy Attorney General, State of Hawaii (*Bertram T. Kanbara,* Attorney General, with her on the brief) for plaintiff-appellee.

---

[9] *See* I. Levey, Condemnation in U.S.A., § 5.03 (1969) and Note, *Rational Classification Problems in Financing State and Local Government, supra* note 2 at 1214-1218.