RAMSAY TRAVEL, INCORPORATED, et al., Plaintiffs-Appellees, Cross Appellants, *v.* RALPH W. KONDO, Director of Taxation, Defendant-Appellant, Cross Appellee.

No. 5122

April 10, 1972

RICHARDSON, C.J., MARUMOTO, ABE, LEVINSON, JJ., and M. DOI, CIRCUIT JUDGE, for KOBAYASHI, J., Disqualified

OPINION OF THE COURT BY LEVINSON, J.

This appeal concerns the susceptibility of certain gross commission income of Ramsay Travel, Inc., B. F. Dillingham Co., Ltd., and Inter-Island Travel Service, Ltd. (the taxpayers herein) to the provisions of the general excise tax law, HRS ch. 237.[1] The taxpayers are all Hawaii corporations engaged in the travel agency business. During the tax years in question, 1959 to 1965, they each maintained offices in the City and County of Honolulu. Their officers, directors, and employees were all Hawaii residents.

In 1965, the Director of Taxation sent to each of the taxpayers a notice of proposed assessment, indicating his intent to assess additional general excise taxes against the taxpayers for commissions received by them. The taxpayers had previously reported these commissions on their general excise tax returns as exempt income. Paying the additional assessments under protest, they subsequently brought actions for refunds in the circuit court. The actions were consolidated pursuant to a stipulation of the parties. By further stipulation, the parties submitted the matter for deci-

---

[1]HRS § 237-13 provides in pertinent part:

*Imposition of tax.* There is hereby levied and shall be assessed and collected annually privilege taxes against persons on account of their business and other activities in the State measured by the application of rates against . . . gross income . . . as follows:

. . . .

(6) Tax on service business. Upon every person engaging or continuing within the State in any service business or calling not otherwise specifically taxed under this chapter, there is likewise hereby levied and shall be assessed and collected a tax equal to four per cent of the gross income of any such business; . . .

HRS § 237-7 defines "service business or calling" to include "all nonprofessional activities engaged in for other persons for a consideration which involve the rendering of a service as distinguished from the sale of tangible property or the production and sale of tangible property."

During the tax years in question, the applicable rate of taxation was 3½%. RLH 1955 § 117-14(f) as amended by S.L.H. 1957 Special Session, Act 1, Sec. 3(q).

sion on an agreed and supplementary statement of facts.

The commission income which was the subject of the Director's additional assessments derived from the following sources: 1) the sale of tickets for transportation by air and sea between Honolulu and points on the mainland United States or in foreign countries; 2) the sale of railroad tickets for transportation on the mainland United States; and 3) the arranging of hotel accommodations and sight-seeing tours in states other than Hawaii and in foreign countries.

Travel agents accounted for 60% of all sales of interstate and international travel during the years assessed, the carriers being responsible for the remainder. Nevertheless, the Director of Taxation did not assess or collect a general excise tax or any tax in lieu thereof on gross income from sales of tickets or package tours in Hawaii by interstate or international air and sea carriers. Nor did he assess or collect such a tax either on that portion of the carriers' gross income which would have been paid to the travel agents had the agents, rather than the carriers, sold the tickets, or on income from commissions paid by one carrier to another for sales of the other's tickets.

The taxpayers contended in the circuit court that the application of the Hawaii general excise tax to the aforementioned commission income placed an unconstitutional burden on interstate and foreign commerce in contravention of article I, section 8 of the United States Constitution.[2] They further argued that the tax on commissions derived from foreign travel was prohibited by article I, section 10 of the United States Constitution, which proscribes the states from imposing a tax on imports or exports.[3] The taxpayers finally maintained that, insofar as the Director of Taxation failed to assess

---

[2]Article I , section 8 of the United States Constitution provides in pertinent part:

The Congress shall have power . . . to regulate commerce with foreign nations, and among the several states . . . .

[3]Article I, section 10 of the United States Constitution provides in pertinent part:

the interstate and international carriers doing business in Hawaii, particularly with regard to that income attributable to the sales activities of their own sales personnel, he had pursued a taxing policy which unreasonably discriminated against the taxpayers as a class in violation of their right to equal protection.[4]

The circuit court rejected that portion of the taxpayers' argument which was based upon the commerce and import-export clauses, but sustained their position with regard to equal protection. Citing *Hasegawa v. Maui Pineapple Co., Ltd.*, 52 Haw. 327, 475 P.2d 679 (1970), the circuit court held that because there existed no rational relationship between the purposes of the Hawaii general excise tax law and the Director's decision to assess the travel agents but not the carriers,

> the assessments against the taxpayers on their commissions derived from sales of interstate and foreign transportation and from package tours were discriminatory and thus illegal and the payments made by them pursuant to such assessments . . . shall be refunded . . . .[5]

On appeal, the Director of Taxation urges that the circuit court erred both in its finding that the taxpayers and the carriers were similarly situated as to their taxability under

---

No state shall, without the consent of Congress, lay any imports or duties on imports or exports, except what may be absolutely necessary for executing its inspection laws; and the net produce of all duties and imposts, laid by any state on imports or exports, shall be for the use of the treasury of the United States; and all such laws shall be subject to the revision and control of the Congress.

[4]The fourteenth amendment of the United States Constitution provides in pertinent part:

No state shall . . . deny to any person within its jurisdiction the equal protection of the laws.

Article I, section 4 of the Hawaii Constitution provides in pertinent part:

No person shall . . . be denied the equal protection of the laws . . . .

[5]The circuit court held that because the taxpayers had made no showing that the carriers derived income from the arranging of interstate or international hotel accommodations, the Director did not act discriminatorily against the taxpayers in assessing general excise taxes on income derived from such activities. The taxpayers do not challenge this portion of the circuit court's decision.

the commerce clause and the Hawaii general excise tax law and in its holding that the Director's failure to assess the carriers subjected the taxpayers to an unconstitutional discrimination. The Director argues additionally that even assuming improperly dissimilar treatment of the taxpayers and the carriers, the taxpayers' proper course would be to seek a writ of mandamus to compel the Director to assess the carriers, rather than a refund of some portion of the tax. On cross-appeal, the taxpayers contend that the circuit court erred in holding that the commerce clause does not bar assessment of the Hawaii general excise tax upon income derived from the sales activities discussed above. They do not seek to disturb the circuit court's holding as it relates to the equal protection and import-export clauses.

We agree with the circuit court that "application of the general excise tax to the commissions received by the taxpayers from the solicitation and sale of interstate and foreign transportation, hotel accommodations and sight-seeing tours does not contravene the Commerce Clause of the United States Constitution." We cannot agree, however, that the taxing authority's failure to assess the general excise tax upon any portion of the income of the interstate and international carriers warrants a refund of the assessments against the taxpayers. If the taxpayers deem that the Director of Taxation has been derelict in performing the legal requirements of his office, they should seek a writ of mandamus in the circuit court to compel the Director to do his duty.

I. *The State of Hawaii May Levy a Nondiscriminatory and Fairly Apportioned Tax upon Interstate Commerce Transacted within Its Borders Where There Is No Risk of a Cumulative State Tax Burden.*

This court, in *HC&D Moving & Storage Company, Inc. v. Yamane,* 48 Haw. 486, 405 P.2d 382 (1965), *appeal dismissed,* 383 U.S. 104 (1966), sought to reconcile the accumulation of past United States Supreme Court decisions regarding the limitations placed by the commerce clause upon the taxing power of the states. From this accretion, which has been described variously as a "quagmire" and a "tangled

underbrush" leaving "much room for controversy and confusion and little in the way of precise guides to the States in the exercise of their indispensable power of taxation," *Northwestern States Portland Cement Co. v. Minnesota*, 358 U.S. 450, 457-58 (1959), a number of principles have emerged.[6] "It was not the purpose of the commerce clause to relieve those engaged in interstate commerce from their just share of state tax burden even though it increases the cost of doing the business." *Western Live Stock v. Bureau of Revenue*, 303 U.S. 250, 254 (1938). "Even interstate business must pay its way . . . ." *Postal Telegraph-Cable Co. v. City of Richmond*, 249 U.S. 252, 259 (1919). Thus, the determination of whether interstate commerce is involved does not resolve the constitutional problem presented. *McGoldrick v. Berwind-White Coal Mining Co.*, 309 U.S. 33, 46-47 (1940). Nor does the fact that a taxpayer's activity is in aid, inducement or furtherance of interstate commerce *per se* invalidate the tax involved. *Western Live Stock v. Bureau of Revenue, supra* at 253; *In re Taxes, Armstrong Perry*, 46 Haw. 269, 275, 379 P.2d 336, 340-41 (1963).

The current view of the United States Supreme Court appears to be that a state tax passes muster under the commerce clause if it can satisfy three conditions: 1) the tax does not discriminate against interstate commerce either on its face or in effect, *Nippert v. City of Richmond*, 327 U.S. 416 (1946); 2) the tax is fairly apportioned in such a way as to include within the measure of the tax only that income attributable to activity within the state, *General Motors Corporation v. Washington*, 377 U.S. 436, 440-41

---

[6]For excellent discussions of the United States Supreme Court's meanderings in the area of state taxation of interstate activity, *see* Hartman, *State Taxation of Interstate Commerce: A Survey and an Appraisal*, 46 Va. L. Rev. 1051 (1960), and *Developments in the Law—Federal Limitations on State Taxation of Interstate Business*, 75 Harv. L. Rev. 953 (1962). *See also* Freeman v. Hewit, 329 U.S. 249, 252 (1946):

The history of this problem is spread over hundreds of volumes of our Reports. To attempt to harmonize all that has been said in the past would neither clarify what has gone before nor guide the future.

(1964); 3) the tax does not subject interstate commerce to the burden of cumulative or multiple taxation. *Western Live Stock v. Bureau of Revenue, supra* at 255-56; *General Motors Corporation v. Washington, supra* at 440. *See generally, HC&D Moving & Storage Company, Inc. v. Yamane, supra.*

The taxpayers cannot argue seriously that the Hawaii general excise tax singles out interstate commerce for discriminatory treatment. The tax is applicable at the same rate to all businesses rendering services in Hawaii, intrastate and interstate alike. Since the taxpayers claim immunity from the operation of the tax, they have the burden of establishing that the tax discriminates against interstate commerce in effect. To do so, they would have to show that the state has failed to exert its power of taxation in proper proportion to their activities within the state and to their "consequent enjoyment of the opportunities and protections which the state has afforded." *General Motors Corporation v. Washington, supra* at 441. The taxpayers have failed to make any such showing.

It is clear that the second and third of the aforementioned conditions present no obstacles to the application of the Hawaii general excise tax to the taxpayers' commission income. Inasmuch as the taxpayers' business activity is conducted exclusively within the State of Hawaii, there is no problem of apportionment. Were the taxpayers to be engaged in business both within and without the state, HRS § 237-21 would limit their taxability to "that portion of the gross income which is derived from activities within the State, to the extent that the apportionment is required by the Constitution or laws of the United States."[7] Furthermore, assessing and levying the general excise tax upon the taxpayer's

---

[7]HRS § 237-21 provides:

§ 237-21 *Apportionment.* If any person, other than persons liable to the tax on manufacturers as provided by section 237-13(1), is engaged in business both within and without the State or in selling goods for delivery outside the State, and if under the Constitution or laws of the United States the entire gross income of such person cannot be included in the measure of this tax,

commission income poses no threat of multiple taxation. As in *HC&D Moving & Storage Company, Inc. v. Yamane, supra,* 48 Haw. at 502-03, 405 P.2d at 392:

> There is no risk of cumulative State tax burdens being imposed against taxpayers on account of their activities. Tax payers are all local corporations engaged in activities performed strictly within the State of Hawaii. Their activities subject to the tax, not extending outside the State, cannot be seized upon as a basis for taxation by other jurisdictions.

The taxpayers attempt to distinguish *In re Taxes, Armstrong Perry, supra, HC&D Moving & Storage Company, Inc. v. Yamane, supra,* and *General Motors Corporation v. Washington, supra,* on the basis that in those cases the excise tax was levied upon a "separable local incident" rather than upon "interstate commerce itself." This is an example of the very sort of "strained and amorphous distinctions" which the United States Supreme Court abandoned in the *General Motors* case and which we renounced in *HC&D.* What makes a business activity a "separable local incident" has nothing to do with whether it may be characterized as "integral" to interstate commerce. Rather, what is significant is the existence of a sufficient "relation or 'nexus' between the State and the business activities sought to be taxed." *HC&D Moving & Storage Company, Inc. v. Yamane, supra,* 48 Haw. at 490, 405 P.2d at 385. This nexus is clearly established as to Hawaii corporations doing business exclusively within

---

there shall be apportioned to the State and included in the measure of the tax that portion of the gross income which is derived from activities within the State, to the extent that the apportionment is required by the Constitution or laws of the United States. In the case of a tax upon the production of property in the State the apportionment shall be determined as in the case of the tax on manufacturers. In other cases, if and to the extent that the apportionment cannot be accurately made by separate accounting methods, there shall be apportioned to the State and included in the measure of this tax that proportion of the gross income, so requiring apportionment, which the cost of doing business within the State, applicable to the gross income, bears to the cost of doing business both within and without the State, applicable to the gross income.

the state.[8] *Id. See also Asiatic Trans-Pacific, Inc. v. Maddox,* 371 F.2d 132, 134-35 (9th Cir. 1967); *McKinnis Travel Service, Inc. v. State,* 78 Wash. 2d 229, 472 P.2d 392 (1970).

II. *The Taxpayers' Proper Remedy Is a Writ of Mandamus to Compel the Director of Taxation to Do His Official Duty.*

We turn now to the circuit court's holding that the failure of the Director of Taxation to assess the Hawaii general excise tax upon that portion of the interstate and international carriers' income attributable to their ticket sales within the State of Hawaii violated the taxpayers' right to the equal protection of the laws and entitled them to a tax refund for the years in question. In so holding, the circuit court relied upon the following language from *Hasegawa v. Maui Pineapple Co., Ltd.,* 52 Haw. 327, 330, 475 P.2d 679, 681 (1970) (footnote omitted):

Thus, one who questions the constitutionality of a statute on equal protection grounds has the burden of showing, with convincing clarity, that the challenged classification does not "rest upon some ground of difference having a fair and substantial relation to the object of the legislation." In ascertaining whether this burden has been met it is necessary for this court to follow a two-step procedure. First, we must ascertain the purpose or objective that the State sought to achieve in [taking the action questioned] . . . . Second, we must examine the means chosen to accomplish that purpose, to determine whether the means bears a reasonable relationship to the purpose.

The circuit court further noted that under HRS § 26-10 the

---

[8]*See also* Nippert v. City of Richmond, 327 U.S. 416, 426 (1946):

. . . [W]e put aside any suggestion that "solicitation," when conducted regularly and continuously within the State, so as to constitute a course of business, may not be "doing business" . . . for the purpose of focusing a tax which in other respects would be sustainable."

Thus, the regular and continuous in-state sale of sight-seeing tours, tickets for transportation, and hotel accommodations would seem in itself to establish a sufficient "nexus" between the state and the business activities to justify the tax.

Director of Taxation has a duty to "administer and enforce the tax revenue laws of the State and collect all taxes and other payments payable thereunder." On the basis of its finding that the taxpayers and the carriers were all substantially involved in the sale of interstate and international transportation, the court held that the Director's decision to collect the general excise tax from the taxpayers but not from the carriers lacked any rational relation to the purposes of HRS ch. 237 and HRS § 26-10.

We need not pass upon the propriety of the circuit court's holding, because we believe that the taxpayers are not entitled to a tax refund, even assuming that the taxpayers have been denied the equal protection of the laws. Every taxpayer engaged in a service business assessed under HRS § 237-13(6) during the years in question is as similarly situated to the carriers as are the taxpayers in the instant appeal. To order a refund of all general excise tax revenues collected from taxpayers engaged in service businesses would, however, be intolerable as a matter of public policy. However labeled, the nub of the taxpayers' complaint is that the Director of Taxation has for some reason refrained from assessing all persons taxable under the service business classification of the general excise tax law. If the taxpayers believe that the Director has refused to assess the carriers in violation of his duty to do so, they may seek a writ of mandamus in the circuit court to compel the Director to act.[9] *See Liggett Co. v. Lee*, 288 U.S. 517, 540 (1933); *County of Sacramento*

---

[9] HRS § 659-1 provides:

*Definition.* [Mandamus] is an order issuing in the name of the State, by the supreme court or any justice thereof or a circuit judge, and addressed to an individual, or corporation, or court of inferior jurisdiction, directing him or it to perform some certain act belonging to the place, duty or quality, with which he or it is clothed,

HRS § 659-2 provides:

*Object.* The object of this order is to prevent a denial of justice, and it therefore issues in all cases where the law has assigned no specific relief by the ordinary means, or even where a party has other means of relief, if the slowness of ordinary legal forms is likely to produce such a delay, that the public good and the administration of justice will suffer from it, and where justice and reason require that some mode should exist of redressing a wrong, or an abuse of any nature whatever.

*v. Hickam,* 66 Cal. 2d 841, 845, 59 Cal. Rptr. 609, 611-12, 428 P.2d 593, 595-96 (1967); *People ex rel. Park Forest v. Cullerton,* 13 Ill. 2d 575, 580, 150 N.E.2d 589, 592 (1958). The taxpayers do not dispute that they are engaged in the "service business or calling" within the meaning of HRS §§ 237-7 and 237-13. "Failure to collect the tax from some whose occupations fall within the provisions of the act, cannot, excuse the [taxpayers] from paying what they owe. And certainly the remedy afforded by state law [*i.e.,* mandamus] assures them equal treatment along with all others similarly situated." *Liggett Co. v. Lee, supra* at 540.

Reversed.

*Johnson H. Wong* and *Clyde Sumida,* Deputy Attorneys General, for defendant-appellant, cross-appellee.

*Gary L. Wixom (Bortz, Case, Stack, Kay, Cronin & Clause* of counsel) for plaintiffs-appellees, cross-appellants.

CONCURRING OPINION OF ABE, J.

I agree with the majority of this court that the interstate commerce clause does not prevent Hawaii from taxing the gross income of the travel agencies. And I agree with the court that even if the travel agencies have established a violation of the Equal Protection Clause, we should not order a refund of all taxes collected under HRS § 237-13(6).

I think, however, that we should admit that a violation of the Equal Protection Clause has occurred. Equal protection analysis requires us to determine whether two taxpayers have, without a rational basis, been classified differently.

Here, the Director of Taxation has treated travel agencies and airlines,[1] both of whom would appear to be liable for

---

HRS § 659-3 provides in pertinent part:

*Directed to whom.* The order may be directed to individuals, whether holding offices or not, to corporations, and to judges of inferior tribunals.

. . . . .

To compel officers to perform duty. It may be directed to public officers to compel them to fulfill any of the duties attached to their office, or which may be legally required of them. . . .

[1] As to commission or other consideration received by an airline from sale of tickets on another airline, or for making hotel or surface transportation accommodations.

the tax in question, in a different fashion. He has assessed a tax against travel agencies but made no attempt to collect from airlines.

No rational basis has been offered to explain the difference. The Director has not argued that he has insufficient staff to prosecute all persons who might be liable for the tax. He has not argued that the failure to tax the airlines was an error, which he would attempt to rectify in the future. And he has not attempted to establish that the airlines are not subject to the tax. Instead, he offers no explanation whatsoever for the differential treatment.

I agree with this court, however, that the fact that an Equal Protection violation has occurred here does not dictate that we should order the Director of Taxation to refund all monies collected under the Act. Of course, an order refunding the taxes or a portion of the taxes of the appellees in this case, or awarding them attorney's fees would not be so unreasonable, and would have the virtue of encouraging suits that would uncover arbitrary action by the Director of Taxation, something which could never be accomplished by relegating the agencies to a writ of mandamus. However, I believe that though such a remedy would cure the Equal Protection violation, it would be an injudicious exercise of our discretion.

In any event, I think this court in this proceeding should issue a writ of mandamus ordering the Director of Taxation to attempt to collect the tax from airlines for all open years. I believe that though the agencies' complaint sought only a refund of their own taxes, that factor does not prevent this court from issuing such a writ under Rule 54(c) of the Haw. Rules of Civ. Pro. which clearly provides that "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings." If there is ever a case in which that rule should be invoked, it is this case.