JOHN JOSHUA, Plaintiff-Appellant, *v.* MTL, INC. and BOBBY E. DENSON, Defendants-Appellees

NO. 8177

(CIVIL NO. 57403)

DECEMBER 29, 1982

RICHARDSON, C.J., LUM, NAKAMURA,
PADGETT AND HAYASHI, JJ.

## OPINION OF THE COURT BY PADGETT, J.

This is an appeal from a judgment below granting the motion to dismiss appellant's complaint for personal injuries arising out of an automobile accident on the ground that the statute of limitations, § 294-36(b), HRS, had expired before the filing of suit. Because we hold that that section and § 294-6(a)(2), HRS, contravene the equal protection clause of Article I, Section 5 of the Constitution of the State of Hawaii, in that those statutes result in an impermissible discrimination against appellant who was not eligible for no-fault benefits, we reverse.

Appellant was injured on August 6, 1976 when his automobile, which was stopped, was struck by a MTL bus. According to appellant's affidavit, filed in opposition to a motion for summary judgment, he had an unexpired no-fault insurance card, but unbeknownst to him, his policy had been cancelled.[1] Notice of cancellation had been sent to his parents' home but had failed to reach him. Consequently, although he was a public assistance recipient eligible for no-fault insurance upon such cancellation under the provisions of § 294-22(b)(2)(A), HRS, he had not applied for such coverage. Because of the cancellation, he was the owner of an uninsured vehicle involved in the accident. He was, therefore, expressly excluded from assigned risk coverage under § 294-23(b)(2)(A), HRS. More importantly, since his vehicle was uninsured, he was not eligible for the payment of no-fault benefits under §§ 294-3 and 294-5(c), HRS, even though the other vehicle was insured.[2]

---

[1] Apparently both parties concede that the last paragraph of § 294-9(c), HRS, providing for the method of cancellation, had been complied with.

[2] This exclusion is not now disputed by the parties. Apparently, it was not so clear to appellant's counsel and possibly the appellees' insurer earlier since appellant's counsel's affidavit filed in opposition to the motion for summary judgment states:
6. On May 18, 1978, in a telephone conference between Affiant and co-Defendant MTL, INC.'s agent, J. TERRY MULLEN (hereinafter AGENT), co-Defendant's AGENT stated that the insurance company would pay medical expenses if they had already exceeded the $1,500 threshold and if they were all related to the accident. Co-Defendant's AGENT further proposed that he be forwarded authorization to inquire into medical conditions of Plaintiff to be able to settle this claim. On My [sic] 19, 1978, Affiant wrote to co-Defendant's AGENT

Appellant's medical expenses resulting from the accident did not total $1,500 until May of 1978, at the earliest. He did not file this suit until March 16, 1979.

Because appellant was not eligible to receive no-fault benefits, the court below ruled that he was required to bring his action within two years of the accident under § 294-36(b)(1), HRS, even though under § 294-36(b)(2), HRS, persons receiving no-fault benefits have until two years after the last payment of such benefits to commence suit.

Central to the disposition of this case is an understanding of the bar to tort actions imposed by § 294-6, HRS. Section 294-6, HRS, provides:

> (a) Tort liability of the owner, operator or user of an insured motor vehicle, or the operator or user of an uninsured motor vehicle who operates or uses such vehicle without reason to believe it to be an uninsured motor vehicle, with respect to accidental harm arising from motor vehicle accidents occurring in this State, is abolished, except as to the following persons or their personal representatives, or legal guardians, and in the following circumstances:
>
> > (1) Death occurs to such person in such a motor vehicle

---

confirming the telephone conversation (See Exhibit 1 attached). No payments were made as previously agreed, therefore, on June 27, 1978, Affiant sent a second letter asking for payment as agreed to previously. (See Exhibit 2 attached)

7. On July 11, 1978, co-Defendant's AGENT responded, denying the commitment to honor the medical bills. (See Exhibit 3 attached)

8. Integrated into the foregoing letters are [sic] evidence of both Affiant and co-Defendant's AGENT attempting to achieve a settlement of Plaintiff's bodily injury claim. Indeed, co-Defendant's AGENT was actively obtaining medical reports from physicians and institutions which had treated Plaintiff for his injuries. On December 21, 1979 [sic], co-Defendant's AGENT continued to imply an honest attempt at settlement of the claim. (See Exhibit 4 attached)

9. On March 9, 1979, co-Defendant's AGENT raised the statute of limitation[s] argument and said they would be making no payments whatsoever on Plaintiff's claim. (See Exhibit 5 attached [sic]) Affiant immediately responded by letter (See Exhibit 6 attached) and filed the present action.

10. Had co-Defendant's AGENT denied the claim earlier or had been unwilling to negotiate for a settlement, the Complaint would have been filed immediately.

(Rec. at 76-77.)

accident; or injury occurs to such person which consists, in whole or in part, in a significant permanent loss of use of a part or function of the body; or injury occurs to such person which consists of a permanent and serious disfigurement which results in subjection of the injured person to mental or emotional suffering;

(2) Injury occurs to such person in a motor vehicle accident in which the amount paid or accrued exceeds the medical-rehabilitative limit established in section 294-10(b) for expenses provided in section 294-2(10)(A) and (B);

(3) Injury occurs to such person in such an accident and as a result of such injury the aggregate limit of no-fault benefits outlined in section 294-2(10) payable to such person are exhausted.

(b) No provision of this chapter shall be construed to exonerate, or in any manner to limit the liability of any person in the business of manufacturing, retailing, repairing, servicing, or otherwise maintaining motor vehicles, arising from a defect in a motor vehicle caused, or not corrected, by an act or omission in the manufacturing, retailing, repairing, servicing, or other maintenance of a vehicle in the course of his business.

(c) No provision of this section shall be construed to exonerate, or in any manner to limit the criminal or civil liability of any person who, in the maintenance, operation, or use of any motor vehicle:

(1) Intentionally causes injury or damage to a person or property; or

(2) Engages in criminal conduct which causes injury or damage to person or property; or

(3) Engages in conduct resulting in punitive or exemplary damages.

(d) No provision of this section shall be construed to abolish tort liability with respect to property damage arising from motor vehicle accidents.

Section 294-6(a)(2), HRS, thus requires that in order for a tort action to be brought by a person, or on a claim (which does not fall within the provisions of §§ 294-6(a)(1) or (3), HRS):

Injury occurs to such person [i.e. appellant] in a motor vehicle accident in which the amount paid or accrued exceeds the

medical-rehabilitative level established. . . ."[3]

Appellant's counsel assumed that his client had to incur $1,500 in medical bills before he could bring suit even though he was not receiving no-fault benefits, but that thereafter, § 294-6(a)(2), HRS, posed no bar to the suit.

Appellees' counsel, at oral argument, agreed that there was a bar to the suit without $1,500 in medical expenses but also agreed that once that limit was reached, the statutory bar of that section no longer existed even though there was no no-fault coverage.[4] Appellees' counsel's further position, however, was that appellant must file suit within two years of the accident. Obviously, in the case where the $1,500 is not paid or accrued until more than two years after the accident, appellees' position creates an anomaly between the two bars to action. (Section 294-6(a)(2), HRS, as construed by counsel for both appellant and appellees and § 294-36(b)(1), HRS.)

Thus, if § 294-6(a)(2), HRS, is construed so as to allow suits by persons barred from receiving no-fault benefits if they have medical and/or rehabilitative expenses of $1,500 or more, then under § 294-36(b)(2) an injured but ineligible person could bring a suit if his or her medical expenses reached the limit on the last day of the second year, provided suit was filed that day, but not if the limit was reached one day later. Appellees' suggested solution to the obviously illogical result of this anomaly would be for appellant to file suit within two years from the accident and then have the court somehow put the action on hold until the required level of medical expenses had been reached. Needless to say, there is no statutory basis for such a procedure and any such action by the court would directly violate § 294-6, HRS.

In the legislative history of § 294-6(a)(2), HRS, we find the following statement in House Conf. Comm. Rpt. No. 13, 1973

---

[3] At the time of the accident, the medical rehabilitative level was fixed under § 294-10(b), HRS, at $1,500. It has since been raised to $3,600.

[4] We are aware that in No. 8071, *McAulton v. Goldstrin,* where suit was filed within the two-year period, the plaintiff was claiming to be still receiving therapy at the time of the trial. The same firm which represents appellees here is contending in that case that because the limit had not been reached by the time of trial, the uninsured plaintiff is absolutely barred from any recovery for personal injuries.

House Journ. 1222:

> (15) The bill provides for the partial abolition of tort liability with respect to the ownership, operation, and maintenance or use of a motor vehicle except under specified circumstances. . . .
>
> (6) *if he is entitled to no-fault benefits and the medical and rehabilitation benefits exceed the limit* to be set by the insurance commissioner. . . .

(Emphasis added.)

The statute was amended by Act *168* of the Session Laws of 1974. The $1,500 threshold was established by that amendment. In the legislative history of that amendment, it is stated:

> Section 294-6(a)(2). . . . We are confident that *$1,500 should account for the vast majority of claims for no-fault benefits.*

(Emphasis added.) Senate Stand. Comm. Rpt. No. 467-74, 1974 Senate Journal 940.

We think it clear that the legislature intended that the exception to the abolition of tort liability under § 294-6(a)(2), HRS, should apply (as the exception in § 294-6(a)(3) unambiguously does) only to persons eligible for no-fault benefits. We so construe that provision.

The statutory scheme is complete and rational insofar as it affects persons eligible to receive no-fault benefits. There is no constitutional impediment to its operation with respect to them.[5]

The question is whether the exception created by § 294-6(a)(2), HRS, only as applied to appellant and others who are ineligible for no-fault benefits, impermissibly infringes upon the equal protection of the law commanded by what is now Section 5 of Article I of the Constitution of the State of Hawaii.

Prior to the effective date of Act 203 of the Session Laws of 1973, The Hawaii Motor Vehicle Reparations Act, popularly called the "No-Fault Law", a person suffering personal injuries and thus incurring medical expenses and other losses, as a result of the negligence of another in an automobile accident, could bring an action to recover those losses from the negligent party (with certain exceptions such as spouses and employers).

---

[5] Since we have not held § 294-6(a), HRS, invalid except to the extent that subsection (2) denies persons ineligible for no-fault benefits equal protection of the laws, our decision will not affect the continued validity of other sections of the statute under § 294-41(b), HRS.

This court held in *Fujioka v. Kam*, 55 Haw. 7, 514 P.2d 568 (1973), that the legislature may change or entirely abrogate a common law rule only where, in so doing, it does not violate a constitutional provision. 55 Haw. at 10, 514 P.2d at 570. We also held in *Nachtwey v. Doi*, 59 Haw. 430, 583 P.2d 955 (1978) that a classification factually based on poverty is not necessarily a "suspect classification" requiring strict scrutiny when challenged on equal protection grounds. The test, however, where strict scrutiny, because of a suspect classification, is not applicable, is whether there is a rational basis for the challenged discrimination. *Nachtwey, supra; State v. Bloss,* 62 Haw. 147, 613 P.2d 354 (1980); *Nagle v. Bd. of Education,* 63 Haw. 389, 629 P.2d 109 (1981); *Daoang v. Dept. of Education,* 63 Haw. 501, 630 P.2d 629 (1981); *Shibuya v. Clark Equipment Co.,* 65 Haw. 26, 647, P.2d 276 (1982).

We have said that equal protection does not mandate that all laws apply with universality to all persons; the State "cannot function without classifying its citizens for various purposes and treating some differently from others." *Hasegawa v. Maui Pineapple Co.,* 52 Haw. 327, 329, 475 P.2d 679, 681 (1970), citing *Barbier v. Connolly,* 113 U.S. 27, 31 (1885); *State v. Johnston,* 51 Haw. 195, 202-203, 456 P.2d 805, 810 (1969). The legislature may not, however, in exercising this right to classify, do so arbitrarily. The classification must be reasonably related to the purpose of the legislation. 52 Haw. at 329, 475 P.2d at 681.

We set out in *Hasegawa* a two-step procedure for determining whether the statute passed constitutional muster:

First, we must ascertain the purpose or objective that the State sought to achieve in enacting [the challenged statute]. Second, we must examine the means chosen to accomplish that purpose, to determine whether the means bears a reasonable relationship to the purpose.

52 Haw. at 330, 475 P.2d at 681.

The purpose of Act 203 was stated as follows:

*Purpose.* The purpose of this chapter is to create a system of reparations for injuries and loss arising from motor vehicle accidents, to compensate these damages without regard to fault, and to limit tort liability for these accidents.

However, despite that expressed purpose or objective of broadening, rather than diminishing reparations, the effect of §

294-6(a)(2), HRS, when combined with the provisions of §§ 294-3, 294-5(c), 294-22(b)(2)(A) and 294-23(b)(2)(A), HRS, is to exclude appellant, and others also ineligible for no-fault benefits, from the recovery of medical expenses either under the statute or by common law tort suit *if, but only if,* the negligent party's vehicle is covered by a no-fault insurance policy. This result occurs even though the statute, under § 294-10, HRS, requires that the no-fault policy issued with respect to the vehicle operated by the negligent party also insure against tort liability to others.

We do not know from the record the reason for the cancellation of the policy of insurance on appellant's vehicle, but common sense tells us that the class of people most likely to find themselves in appellant's position are those whose poverty causes them to be unable to afford insurance.[6] The unfortunate consequence of this is that the people most likely to be deprived of any hope of recovering their medical expenses either through a tort suit or insurance are also the people most likely to be unable to otherwise pay for, or even to obtain, the needed medical services for injuries negligently inflicted upon them by insured drivers.[7] The result of the classification is hence likely to result not only in denying the class discriminated against reimbursement for their medical expenses but, as a practical matter, in actually depriving them of the needed services whenever the negligent party is driving a vehicle insured under a no-fault policy.[8]

Certainly, given the stated purpose and objective of the Act, there is no rational basis, per se, for its discriminatory effects on appellant and others like him. It is argued that the rational basis can be found in a policy, evident in the statute, of penalizing those who drive uninsured vehicles. But that policy is not included in the expressed purpose of the statute. Moreover, the legislature has

---

[6] This is so whether they qualify for welfare and are not insured due to circumstances such as those which brought about appellant's unhappy plight or, though poor, simply do not meet the qualifications for public assistance.

[7] The high "threshold" (formerly $1,500, now $3,600) of medical and/or rehabilitative expense makes this unfortunate result even more likely.

[8] Peculiarly, if the negligent party is uninsured, the statute is no bar to suit and an injured member of the deprived class has some hope of recovery of such expenses.

expressly attempted to effectuate that policy by the stringent criminal penalty laid down in § 294-39, HRS, for operating or permitting to be operated an unlicensed vehicle, as well as by denying such persons any no-fault benefits. Given those sanctions, it seems unlikely, on any rational basis, that the discriminatory deprivation of the chance of any tort recovery by appellant, and others like him, of medical expenses arising from the negligent conduct of *insured* drivers, while allowing no-fault beneficiaries not only their no-fault benefits but additionally a right of suit after the threshold has been reached, can give any additional aid to the policy of requiring motor vehicles to be insured by discouraging the operation of uninsured vehicles.

The discriminatory classification of appellant and others like him effected by § 294-6(a)(2), HRS, therefore, is without rational basis. It deprives them of the equal protection of the laws to which our state constitution entitles them.[9]

We turn then to a consideration of the statute under which the court below held this action barred, § 294-36(b), HRS. It reads:

*Statute of limitations. . . .*

(b) No suit arising out of a motor vehicle accident shall be brought in tort more than:

(1) Two years after the date of the motor vehicle accident upon which the claim is based; or

(2) Two years after the date of the last payment of no-fault or optional additional benefits; whichever is the later.

Clearly this section, and not § 657-7, HRS, is the applicable statute of limitations with respect to automobile accidents involving an insured vehicle or vehicles.

A statute of limitations which denies equal protection of the laws

---

[9] Chapter 386, HRS, the Workers' Compensation Law, is often cited by analogy to Chapter 294. The workers' compensation law abolished tort liability as between an employer and an employee injured in the course and scope of his employment in favor of a system of reparations to the employee without regard to fault. The exception to employee eligibility for such reparations appearing in § 386-3, HRS, is drunkenness. Clearly there is a logical connection between drunkenness on the job and injuries to employees, and, therefore, a reasonable basis for the separate classification of drunken employees, since obviously a drunken employee is more likely to be injured on the job. An uninsured driver, however, is no more likely to be injured in an automobile accident than one who is insured.

is unconstitutional and will not be upheld. *Fujioka v. Kam, supra; Shibuya v. Clark Equipment Co., supra.*

The discriminatory feature of § 294-36(b), HRS, is that a person involved in the same accident as appellant and suffering the very same injuries but who was receiving or had received no-fault benefits would not have had his action dismissed as untimely even though he filed suit on the same day as appellant did here. Yet the construction, by the court below, that the language of the section mandated dismissal of appellant's suit, is clearly correct, if the statute is constitutional.

Given the stated purpose of the act to broaden reparations for injuries arising from motor vehicle accidents while limiting tort liability, there is no logical basis for extending the statute with respect to claims against negligent operators of *insured* vehicles so that persons receiving no-fault benefits have until two years from the last payment of such benefits to file suit while requiring persons, such as appellant, not eligible for such benefits, who continue to suffer exactly the same losses of medical expenses, to sue within two years of the accident. The discrimination against persons suffering medical expenses, and the like, who are not being reimbursed by no-fault payments in favor of those who are suffering the same losses but receiving such payments denies the former equal protection of the laws in violation of our constitution. We see no constitutional impediment to the continued efficacy and operation of § 294-36(b) with respect to persons who are eligible for no-fault benefits.

Because §§ 294-6(a)(2) and 294-36(b), HRS, deprived appellant of equal protection of the laws, the order dismissing the suit was erroneous and appellant should have been permitted to proceed with his action. Reversed and remanded for further proceedings.

*Hayden F. Burgess* for appellant.

*David Waters (Goodsill Anderson & Quinn* of counsel) for appellees.

## DISSENTING OPINION OF NAKAMURA, J.,
## WITH WHOM RICHARDSON, C.J., JOINS

Two key provisions of the No-Fault Law[1] as they apply to persons ineligible for no-fault benefits are invalidated by the court on equal protection grounds. Plaintiff-appellant, however, neither argued nor demonstrated his plight could be ascribed to a statutory classification that disadvantaged him, and I respectfully dissent.

### I.

Compulsory insurance maintained by or on behalf of all persons who own or drive automobiles in the State of Hawaii is basic to the scheme of motor vehicle accident reparations adopted by the legislature. Thus the necessary insurance coverage is provided for persons receiving public assistance through the assigned risks plan established pursuant to HRS § 294-22, and plaintiff-appellant, a recipient of public assistance, was eligible for coverage under a no-fault insurance policy at no cost to himself when the accident causing him injury occurred. *See* HRS § 294-22(b)(2)(A).

Plaintiff-appellant was not then protected by a no-fault insurance policy and thus ineligible for no-fault benefits, but for reasons

---

[1] The decision invalidates HRS § 294-6(a)(2), reading:

   (a) Tort liability of the owner, operator or user of an insured motor vehicle, or the operator or user of an uninsured motor vehicle who operates or uses such vehicle without reason to believe it to be an uninsured motor vehicle, with respect to accidental harm arising from motor vehicle accidents occurring in this State, is abolished, except as to the following persons or their personal representatives, or legal guardians, and in the following circumstances:

   .   .   .   .

   (2) Injury occurs to such person in a motor vehicle accident in which the amount paid or accrued exceeds the medical-rehabilitative limit established in section 294-10(b) for expenses provided in section 294-2(10)(A) and (B).
and HRS § 294-36(b)(2), reading:
   (b) No suit arising out of a motor vehicle accident shall be brought in tort more than:

   .   .   .   .

   (2) Two years after the date of the last payment of no-fault or optional additional benefits; whichever is the later.
as the subsections apply to persons ineligible for no-fault benefits.

other than his impoverished state or a classification effected by the legislature. In the words of his counsel:

At the time of the accident, Plaintiff had possessed a no-fault insurance card which had not expired. However, unknown to him the insurance policy had been cancelled a few months earlier with notice sent to his parents' home. Plaintiff had been living with his wife and child at Punaluu Beach Park, was unemployed and on welfare and had no actual knowledge of the cancellation. He was eligible for no-fault insurance coverage at no cost to him; but because he was unaware of the cancellation, had not applied for it through welfare.

I can only conclude from the above that neglect was the cause of plaintiff-appellant's disqualification. Moreover, the neglect was not that of the insurance carrier since the parties agree the governing statutory provision was followed in the cancellation of the policy.

Yet the court subjects HRS §§ 294-6(a)(2) and 294-36(b)(2) to equal protection analysis and concludes they are constitutionally infirm as applied to persons ineligible for no-fault benefits but valid when applied to persons who have complied with requisites of the No-Fault Law. Presumably, one who would ignore the legislative command not to operate an uninsured vehicle now retains a right to sue in tort without limitation whenever harm accrues to him from a vehicular accident; but the law still circumscribes the rights of those who follow its mandate when they are injured. I cannot believe the demand for equal protection impels this result.

The pertinent " 'constitutional demand is not a demand that a statute necessarily apply equally to all persons.' *Rinaldi v. Yeager,* 384 U.S. 305, 309 (1966)." *Shibuya v. Architects Hawaii, Ltd.,* 65 Haw. 26, 35, 647 P.2d 276, 283 (1982). For "[t]he legislature, if it is to act at all, must impose special burdens upon or grant special benefits to special groups or classes of individuals." Tussman & tenBroek, *The Equal Protection of the Laws,* 37 Calif. L. Rev. 341, 343 (1949). In adopting the No-Fault Law, the legislature acted to modify our system of motor vehicle accident reparations and imposed a special burden of compulsory insurance coverage on all owners and operators of motor vehicles in the State. The validity of the statute's purpose is not questioned, but the court finds an infirmity in a classification purportedly effected thereby.

The compulsory insurance requirement, however, is common to

all motorists. The burden of plaintiff-appellant and those similarly situated is not more onerous than that imposed upon any other owner or driver of a motor vehicle, for their monetary burdens with respect to no-fault insurance are assumed by the joint underwriting plan established pursuant to HRS Chapter 294 and maintained by no-fault insurers. *See* HRS §§ 294-20(a), 294-22(b)(2)(A), and 294-24(b)(2). Thus plaintiff-appellant was not disadvantaged by any distinctions drawn by the legislature and had no reason to invoke the equal protection guaranty, a fact he apparently recognized. The court nevertheless concludes that two provisions of the No-Fault Law breach the Equal Protection Clause of the State Constitution.

But "[i]n construing statutory enactments whose constitutionality has been challenged, we have steadfastly maintained 'that every enactment of the legislature is presumptively constitutional, and a party challenging the statute has the burden of showing unconstitutionality beyond a reasonable doubt.' *Schwab v. Ariyoshi*, 58 Haw. 25, 31, 564 P.2d 135, 139 (1977). *See also Bishop v. Mahiko*, 35 Haw. 608 (1940); *In re Mott-Smith*, 29 Haw. 343 (1926)." *State v. Raitz*, 63 Haw. 64, 72-73, 621 P.2d 352, 359 (1980). Plaintiff-appellant chose not to assume the difficult task of demonstrating unconstitutionality beyond a reasonable doubt, and the provisions questioned by the court were, therefore, presumptively constitutional.

## II.

Plaintiff-appellant argued a literal application of the statutory provisions at issue would be unfair; his plea to the court was that they be construed to permit his suit, which he asserted was commenced within two years after fifteen hundred dollars in medical and rehabilitative expenses were accrued, to proceed. The court agrees plaintiff-appellant should not be denied the opportunity to present his claim for damages to the trial court. However, it adopts the drastic remedial expedient of divesting the provisions of all effect where persons ineligible for no-fault benefits are concerned.

"Our duty is to supply a rational interpretation of the statute if possible, not to destroy it or to create a vacuum." *State v. Raitz*, 63 Haw. at 73, 621 P.2d at 359. "Moreover, '[i]f feasible within bounds set by their words and purpose, statutes should be construed to preserve their constitutionality.' *Altman v. Hofferber*, 28 Cal.3d 161,

175, 616 P.2d 836, 846, 167 Cal. Rptr. 854, 864 (1980)." *Id.*

In *Ashwander v. Tennessee Valley Authority,* 297 U.S. 288 (1936), a historic case for more than one reason, Justice Brandeis summarized the rules developed by the Supreme Court for its governance when "constitutional questions [are] pressed upon it for decision." *Id.* at 346 (Brandeis, J., concurring). The following are among the seven rules cited:

> 2. The Court will not 'anticipate a question of constitutional law in advance of the necessity of deciding it.' *Liverpool, N.Y. & P.S.S. Co. v. Emigration Commissioners,* 113 U.S. 33, 39; *Abrams v. Van Schaick,* 293 U.S. 188; *Wilshire Oil Co. v. United States,* 295 U.S. 100. 'It is not the habit of the Court to decide questions of a constitutional nature unless absolutely necessary to a decision of the case.' *Burton v. United States,* 196 U.S. 283, 295.

*Id.* at 346-47 (Brandeis, J., concurring) (footnote omitted); and

> 7. 'When the validity of an act of the Congress is drawn in question, and even if a serious doubt of constitutionality is raised, it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided.' *Crowell v. Benson,* 285 U.S. 22, 62.

*Id.* at 348 (Brandeis, J., concurring) (footnote omitted). We have echoed these sentiments as the government of Hawaii has long been one of separated powers and the restraints implicit in the federal system bind us too. Thus in *Pan American Airways Co. v. Godbold,* 36 Haw. 170 (1942), we said:

> 'When a statute is susceptible of two constructions, one of which supports it and gives it effect, and the other renders it unconstitutional and void, the former is to be adopted, even though the latter may be the more natural interpretation of the language used, for an act is never to be construed as unconstitutional if a reasonable construction can be placed upon it which will render it valid. *State v. Clement Nat. Bank,* 84 Vt. 167, 200, 78 Atl. 944, Ann. Cas. 1912D, 22. . . .'

*Id.* at 182. *See also Godbold v. Manibog,* 36 Haw. 206, 217 (1942).

From my reading of the provisions in question, I am convinced a reasonable construction could have been placed upon them to attain the remedy sought by plaintiff-appellant without emasculating the No-Fault Law.