STATE OF HAWAII, Plaintiff-Appellee, *v.* AUGUST F. RAITZ, Defendant-Appellant

NO. 7636

AUGUST F. RAITZ, Petitioner, *v.* GEORGE YUEN, Individually and in his capacity as Director of Health, and HOWARD GUDEMAN, Individually and in his capacity as Administrator of the Hawaii State Hospital, Respondents

NO. 7695

DECEMBER 26, 1980

RICHARDSON, C.J., OGATA, MENOR, LUM AND NAKAMURA, JJ.

OPINION OF THE COURT BY NAKAMURA, J.

In these consolidated cases, Defendant August F. Raitz challenges the constitutionality of the Penal Code provisions authorizing the pre-trial commitment of persons charged with criminal behavior but found incompetent to stand trial.[1] He appeals from an order of the Circuit Court of the First Circuit suspending criminal proceedings against him but committing him to the custody of the Director

---

[1] The pertinent statutory provisions read:

§ 704-406 *Effect of finding of unfitness to proceed.* (1) If the court determines that the defendant lacks fitness to proceed, the proceeding against him shall be suspended, except as provided in section 704-407, and the court shall commit him to the custody of the director of health to be placed in an appropriate institution for detention, care, and treatment for so long as such unfitness shall endure. If the court is satisfied that the defendant may be released on condition without danger to himself or to the person or property of others, the court shall order his release, which shall continue at the discretion of the court, on such conditions as the court determines necessary. A copy of the report filed pursuant to section 704-404 shall be attached to the order of committment [sic] or order of conditional release.

(2) When the court, on its own motion or upon the application of the director of health, the prosecuting attorney, or the defendant, determines, after a hearing if a hearing is requested, that the defendant has regained fitness to proceed,.the penal proceeding shall be resumed. If, however, the court is of the view that so much time has elapsed since the commitment or conditional release of the defendant that it would be unjust to resume the proceeding, the court may dismiss the charge and may order the defendant to be discharged or, subject to the law governing the involuntary hospitalization or conditional release of persons suffering from physical or mental disease, disorder, or defect, order the defendant to be committed to the custody of the director of health to be placed in an appropriate institution for detention, care, and treatment or order the defendant to be released on such conditions as the court determines necessary.

of Health; he has also brought a Petition for a Writ of Habeas Corpus, seeking release from such custody. Finding no constitutional infirmities or violations on the face of HRS § 704-406 or in the manner it has been applied thus far to defendant, we affirm the order and dismiss the petition.

I.

Defendant was arrested and charged with forgery in the second degree on May 27, 1979. Shortly thereafter, his court-appointed counsel filed a motion for a mental examination, supported by a report from a psychiatrist containing an opinion that defendant appeared "unable to comprehend various aspects of his situation." The request for examination was granted and a three-member panel of examiners consisting of a psychologist and two psychiatrists was appointed. The psychologist found him to be suffering from pre-senile dementia; the psychiatrists were less specific in diagnosis, submitting diagnostic findings of chronic brain syndrome. But the examiners agreed defendant did not understand the proceedings against him and that he was unable to assist in his own defense.

When an indictment was subsequently returned by the Grand Jury, defendant's counsel promptly moved to suspend proceedings. Responding to a request made by counsel in the course of the hearing on the motion, the circuit court ordered a further examination of defendant to determine whether he represented a substantial danger to himself and others. The court, however, ordered the suspension of proceedings pending the examination. It also ordered that defendant be detained in the Halawa Correctional Facility or in another facility selected by the examiners in the meanwhile.

The examiners subjected defendant to further examination and reported his condition had improved, but that his judgment was still impaired. They further reported he did not represent a substantial danger to the persons of others. A "Motion to Dismiss Commitment" was subsequently filed and at the hearing on this motion on October 5, 1979, members of the examining panel testified defendant did not pose "a substantial danger to the persons of others," but that he represented a danger to the property of others. They agreed he required custodial care, not necessarily in the State Hospital, because of his impaired judgment.

Following the entry on November 13, 1979 of an "Order Suspending Proceedings" and committing defendant to the custody of the Director of Health for placement "in an appropriate institution for detention, care and treatment for so long as such unfitness shall endure," defendant was committed to the State Hospital. However, during the pendency of this appeal and habeas corpus petition, he was conditionally released from the hospital by the circuit court. The release was ordered pursuant to a written stipulation executed by counsel for the Director of Health, a deputy prosecuting attorney, and counsel for defendant.

## II.

Our concern here is with a defendant's "fitness to proceed." While issues related to a defendant's mental state at the time of the commission of an alleged offense have received wider public and judicial attention, questions concerning competency to stand trial may be as evasive of satisfactory resolution as those related to the insanity defense, particularly where the disability, as in this case, may be of a permanent nature.

The State is confronted by the following trilemma in dealing with a defendant who may be mentally incompetent to proceed to trial: (1) if he is actually incompetent but is nonetheless tried, the trial would have been in violation of an express statutory provision[2] and due process;[3] (2) if he is not tried but committed to an institution after a determination of his incapacity for "so long as such incapacity

---

[2] HRS § 704-403 provides that:
    No person who as a result of a physical or mental disease, disorder, or defect lacks capacity to understand the proceedings against him or to assist in his own defense shall be tried, convicted, or sentenced for the commission of an offense so long as such incapacity endures.
The foregoing provision reiterates the standard for determining a defendant's competency to proceed to trial enunciated by the United States Supreme Court in Dusky v. United States, 362 U.S. 402, 402 (1960), where it said:
    [T]he "test must be whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding — and whether he has a rational as well as factual understanding of the proceedings against him."

[3] See Drope v. Missouri, 420 U.S. 162, 171-72 (1975); Pate v. Robinson, 383 U.S. 375, 378 (1966).

endures," and such incompetency eventuates in permanent disability, the commitment would then have been tantamount to a life sentence without trial; and (3) if he is neither tried nor committed, but released, the defendant would, as a practical matter, be free to engage in further criminal conduct with impunity. The first two alternatives would certainly be unfair to the defendant; the third would be totally unacceptable to society. But a rational reconciliation of the interests of defendant and society in this situation must, nevertheless, be sought. Decisions of the United States Supreme Court supply the necessary direction here, *State v. Tyrrell*, 60 Haw. 17, 20-24, 586 P.2d 1028, 1031-33 (1978), and the guiding principles have been articulated in *Greenwood v. United States*, 350 U.S. 366 (1956) and *Jackson v. Indiana*, 406 U.S. 715 (1972), especially in the latter.

The validity of a federal code provision authorizing a district court to determine the mental state of a federal defendant whose competency to proceed to trial is in doubt and to commit him to the custody of the Attorney General thereafter, though the established incapacity may be permanent or of indefinite duration, was upheld by the Supreme Court in *Greenwood v. United States, supra.* In its view, the improbability of the defendant's recovery did not "defeat federal power to make [the] initial commitment. . . ." 350 U.S. at 375. The Court was probably influenced in this regard by a reluctance to accept psychiatric opinion and prognosis at face value.[4] However,

---

[4] The pertinent portion of the Court's opinion reads:

The fact that at present there may be little likelihood of recovery does not defeat federal power to make this initial commitment of the petitioner. We cannot say that federal authority to prosecute has now been irretrievably frustrated. The record shows that two court-appointed psychiatrists found petitioner sane and competent for trial. When the District Court did not accept their conclusion, their testimony illustrates the uncertainty of diagnosis in this field and the tentativeness of professional judgment. The only certain thing that can be said about the present state of knowledge and therapy regarding mental disease is that science has not reached finality of judgment, even about a situation as unpromising as petitioner's, at least as indicated by the report of the United States Medical Center at Springfield. Certainly, denial of constitutional power of commitment to Congress in dealing with a situation like this ought not to rest on dogmatic adherence to one view or another on controversial psychiatric issues.

350 U.S. at 375-76.

Interestingly, Greenwood apparently recovered his competency and was subsequently tried and convicted. *See* Gobert, *Competency to Stand Trial: A Pre- and Post-Jackson Analysis,* 40 Tenn. L. Rev. 659, 675 n.97 (1973).

the scope of the ruling was expressly limited to the fact situation presented, one where the district court had found defendant "would probably endanger the officers, property, or other interests of the United States" if released. 350 U.S. at 376.

In *Jackson v. Indiana, supra,* the defendant was a mentally retarded deaf mute who could neither read, write, nor otherwise communicate, except to a limited extent by sign language. After he was indicted on two counts of robbery, the trial court, pursuant to the Indiana statutory procedure for pre-trial commitment of incompetent defendants, appointed two examining physicians. The physicians, who were psychiatrists, reported the defendant was unable to understand the charges against him or to participate in his defense. One examiner was of the opinion that it was doubtful whether defendant could ever develop any proficiency in the use of sign language; the other felt defendant would be incompetent to stand trial even if he were not a deaf mute. The trial court found defendant lacked "comprehension sufficient to make his defense" and committed him to the state department of mental health until such time as the department should certify his sanity. Practically speaking, this was a commitment for life; that defendant would never attain the mental competence required for trial was almost a foregone conclusion. On certiorari, the Supreme Court concluded the defendant had been deprived of equal protection because Indiana's statutory standards for commitment and release of criminal defendants were more lenient and more stringent, respectively, than commitment and release standards applied to persons not charged with crimes. It likewise concluded the indefinite commitment of a criminal defendant solely because he lacked the capacity to stand trial deprived him of equal protection. The Court also ruled an indeterminate detention on such ground did not "square with the Fourteenth Amendment's guarantee of due process." 406 U.S. at 731.

The earlier approval of the indefinite detention of an incompetent defendant in *Greenwood* was distinguished on the ground that relevant provisions of the federal statute as applied there entitled the defendant to release "when he [was] no longer . . . 'dangerous.' " *Id.* at 732. Furthermore, the Court observed that later federal decisions imposed a "rule of reasonableness" on the statute's application, whereby a defendant, in the absence of a finding of dangerousness,

could "be held only for a 'reasonable period of time' necessary to determine whether there is a substantial chance of his attaining the capacity to stand trial in the foreseeable future." *Id.* at 733. Due process, in its judgment, required "that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." *Id.* at 738. And the "reasonable rule" that states were to follow was couched in these terms:

> We hold, consequently, that a person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future. If it is determined that this is not the case, then the State must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant. Furthermore, even if it is determined that the defendant probably soon will be able to stand trial, his continued commitment must be justified by progress toward that goal. In light of differing state facilities and procedures and a lack of evidence in this record, we do not think it appropriate for us to attempt to prescribe arbitrary time limits.

*Id.* (Footnote omitted).

Therefore, it is a continued confinement of a defendant beyond a reasonable period necessary to determine his lack of fitness to proceed and the expected duration of any incapacity, not an initial commitment for the foregoing purpose upon a suggestion of mental incompetence, that would violate precepts of equal protection and due process proclaimed by the Supreme Court in *Jackson v. Indiana.*

### III.

Defendant asserts HRS § 704-406 is patently inconsistent with due process guarantees in the United States and Hawaii constitutions. Citing *Jackson v. Indiana, supra,* he contends the indefinite commitment sanctioned by the foregoing statute and the absence of a provision for the periodic review of commitments render it void. He further argues § 704-406 also denies him equal protection of the laws because of the lack of a provision for court review after an initial ninety-day period of confinement like that in the statutory provi-

sions governing non-consensual civil commitments of mentally disturbed persons, HRS § 334-60. However, we do not find HRS § 704-406 facially invalid, despite the seemingly cogent grounds advanced by defendant. Nor do we find its application in defendant's case breached applicable constitutional guarantees.

## A.

At first sight HRS § 704-406 appears to clearly transgress *Jackson's* interdiction against the open-ended commitment of mentally incompetent criminal defendants, for § 704-406(1) states a defendant found unfit to proceed shall be committed to the custody of the director of health "for so long as such unfitness shall endure." And where a defendant's incapacity is probably of a permanent nature, confinement thereunder could well be for life. We also recognize that § 704-406(1) standing alone would contravene *Jackson's* decree that the nature and duration of the commitment of a criminal defendant must bear some reasonable relation to its purpose since confinement pursuant to § 704-406 is ostensibly for a limited purpose. But a statutory provision seldom may be read in isolation, and we must venture beyond the bounds of the subsection before arriving at a conclusion on whether the relevant statutory scheme actually harbors a constitutional infirmity. *See State v. Kaneakua*, 61 Haw. 136, 140, 597 P.2d 590, 592 (1979).

While the language of HRS § 704-406(1) speaks of open-ended commitments, the subsection which follows connotes a design to preclude long-term or indeterminate commitments; it also indicates a defendant should not be detained "unjustly." Section 704-406(2) provides that penal proceedings against a defendant whose unfitness to proceed has been declared pursuant to § 704-406(1) must be resumed when the circuit court determines he has regained fitness. This determination may be sought by the director of health, the prosecutor, or the defendant. A decision here also may be initiated by the court. And if the recovery period has been so lengthy that it would be unjust to resume proceedings, the court can dismiss the charge and discharge the defendant. Or it may, "subject to the law governing the involuntary hospitalization or conditional release of persons suffering from . . . mental disease, disorder or defect . . ." order that the defendant be committed to the custody of the director

of health. The foregoing reference to the "law governing . . . involuntary hospitalization" in authorizing further detention can only be to the civil commitment procedures of HRS § 334-60. Hence, we do not perceive a legislative contemplation to sanction confinement for unlimited periods under § 704-406; the duration of confinement is limited in the sense that it is governed by when a defendant regains or is expected to regain competence and considerations of fairness to defendant.[5] We also see no basis for inferring that commitments likely to be very lengthy can be ordered pursuant to § 704-406 without regard to the safeguards in HRS § 334-60. For confinement after the initial commitment and a determination on whether the defendant has regained competency must follow civil commitment procedures. Thus, there is no clear design to authorize commitments for indefinite periods pursuant to § 704-406(1) — the phrase "for so long as such unfitness endures" has been plainly qualified by language which follows. Our task, then, is to resolve the ambiguity, if the language lends itself to a rational reading consonant with the purpose of HRS § 704-406 and constitutional principles. *Ashwander v. Tennessee Valley Authority,* 297 U.S. 288, 348 (1936) (Brandeis, J., concurring); *Crowell v. Benson,* 285 U.S. 22, 62 (1932); *Davis v. Cox,* ____ Ark. ____, ____, 593 S.W.2d 180, 182 (1980); *Kansas State Board of Healing Arts v. Acker,* 228 Kan. 145, 148, 612 P.2d 610, 614 (1980). *Cf. Scales v. United States,* 367 U.S. 203, 211 (1961); *Bolton v. Harris,* 395 F.2d 642, 652 (D.C. Cir. 1968).

In construing statutory enactments whose constitutionality has been challenged, we have steadfastly maintained "that every enactment of the legislature is presumptively constitutional, and a party challenging the statute has the burden of showing unconstitu-

---

[5] The Penal Code commentary on § 704-406 reads in part:

The second sentence of subsection (2) follows the suggestion of the Model Penal Code and permits "the court to dismiss the prosecution if because of lapse of time it would be unjust to continue." Under the prior law the power to dismiss the prosecution was vested in the prosecutor's discretion to enter a nolle prosequi. The Code accepts the position that

there is value . . '. in vesting such a power in the Court, to be exercised either where because of the lapse of time a defendant is unable to produce certain witnesses or other evidence once available which is essential to his defense, or where because of the length of the intervening period which he has spent in a mental institution subsequent to the alleged wrongful conduct it seems unjust to subject him to trial and punishment. (Footnotes omitted).

tionality beyond a reasonable doubt." *Schwab v. Ariyoshi,* 58 Haw. 25, 31 564 P.2d 135, 139 (1977). *See also Bishop v. Mahiko,* 35 Haw. 608 (1940); *In re Mott-Smith,* 29 Haw. 343 (1926). We are unable to say unconstitutionality has been demonstrated here. Moreover, "[i]f feasible within bounds set by their words and purpose, statutes should be construed to preserve their constitutionality," *Altman v. Hofferber,* 28 Cal.3d 161, 175, 616 P.2d 836, 846, 167 Cal. Rptr. 854, 864 (1980). *See also People v. Sequin,* ____ Colo. ____, ____, 609 P.2d 622, 625 (1980); *New Jersey State Chamber of Commerce v. New Jersey Election Law Enforcement Commission,* 82 N.J. 57, 75, 411 A.2d 168, 177 (1980). The language of the second subsection of § 704-406 discussed earlier furnishes a sound and ample basis for construing the section consistently with *Jackson* and its teachings, as well as the statute's purpose, even though the first subsection speaks of commitment "for so long as . . . unfitness shall endure." Our duty is to supply a rational interpretation of the statute if possible, not to destroy it or to create a vacuum. *Id.* And where "literalness may strangle meaning," we need not confine ourselves to its bare words. *Lynch v. Overholser,* 369 U.S. 705, 710 (1962).[6] We thus hold that:

1. A criminal defendant initially committed pursuant to HRS § 704-406 because of a lack of fitness to proceed may only be held for a reasonable period necessary to determine if there is a substantial probability that he will regain fitness to proceed in the future;

2. if it is determined that he probably will be able to proceed soon, his continued confinement must be justified by progress toward recovery.

3. if it is determined that a substantial probability exists that he will remain unfit to proceed, he must be released or subjected to civil commitment procedures; and

In adopting a "reasonable rule" for the application of HRS § 704-406, we do not deem it necessary to presently prescribe arbitrary

---

[6] The admonition of the Supreme Court in this regard was:

The decisions of this Court have repeatedly warned against the dangers of an approach to statutory construction which confines itself to the bare words of a statute, *e.g., Church of the Holy Trinity v. United States,* 143 U.S. 457, 459-462; *Markham v. Cabell,* 326 U.S. 404, 409, for "literalness may strangle meaning," *Utah Junk Co. v. Porter,* 328 U.S. 39, 44.

369 U.S. at 710.

time limits on the detention of defendants thereunder. We believe this is more properly a matter for legislative consideration.

## B.

Having decided HRS § 704-406 contains no constitutional infirmity as written, we now consider whether there were constitutional violations as it was applied.

Defendant, through counsel, sought a declaration of his incapacity to stand trial. Acceding to counsel's request, the circuit court appointed a panel of qualified examiners. After considering their opinions, the court committed defendant to the custody of the director of health for observation, care, and treatment, all with a view toward restoring his fitness to proceed, if possible. Shortly thereafter, defendant sought release from custody on the ground that he was not dangerous to others in a physical sense. After further examinations where the examiners noted an improvement in defendant's mental condition, the motion for release from commitment was denied, although it was doubtful that he was dangerous to the persons of others. We find no violation of due process or equal protection in defendant's commitment or in the denial of his motion for release under these circumstances.

As noted, the trial of a mentally incompetent defendant would be contrary to constitutional guarantees of due process. But where a request is made on behalf of an allegedly incompetent defendant that proceedings be suspended, perhaps never to be resumed, a commitment for the purpose of verifying unfitness would do no violence to notions of fairness and humanity underlying the due process clauses in the United States and Hawaii constitutions. Compelling State interests in law enforcement and public safety and in the humane treatment of the mentally disturbed would justify a commitment to determine whether there is an actual incapacity to stand trial. We experience no qualms in upholding defendant's initial commitment.

More difficult questions related to due process and equal protection are posed by defendant's continued confinement pursuant to HRS § 704-406. However, we believe these problems may be rationally resolved on the remand of this case to the circuit court by an application of the "reasonable rule" adopted earlier.

The record discloses defendant's release was sought shortly after commitment on a ground that further confinement was unwarranted because he represented no physical danger to other persons. Since the reason for the initial commitment was not defendant's dangerous nature, the circuit court did not err in denying release from commitment. Neither due process nor equal protection mandates the immediate release of a defendant committed pursuant to HRS § 704-406 because he poses no threat to the safety of others.[7] Furthermore, we do not choose to second-guess the circuit court's decision not to free defendant or to subject him to civil commitment procedures, for we are not definitely and firmly convinced by the record that sufficient time had then elapsed to enable the court to render a meaningful decision with respect to his regaining fitness "in the foreseeable future."

Defendant also asserts the lack of a provision for periodic review of a defendant's mental state in § 704-406 breached equal protection guarantees. The objection is not well-taken. § 704-406(2) allows the director of health, the prosecutor, the defendant, or the court to initiate hearings at any time to determine whether fitness to proceed has been restored. Since nothing therein precludes the initiation of hearings by the same parties to determine when an incompetent defendant is likely to recover from his disturbed mental state, we conclude the section implicitly permits a defendant to seek release from custody after sufficient time has elapsed for a determination on the nature and probable duration of his disability. In the instant case, the parties apparently also assumed § 704-406 allowed review when additional information relative to defendant's mental state was secured, inasmuch as no one objected to a consideration of his motion. While the request for review may have been premature, the circuit court nevertheless conducted a hearing. Thus, the absence of an explicit provision for review to consider the probable duration of incompetency did not deprive defendant of equal protection of the laws as guaranteed by the United States and Hawaii constitutions.

The circuit court's order suspending criminal proceedings against defendant and committing him to the custody of the director of health is affirmed and the Petition for Writ of Habeas Corpus is

---

[7] *See* O'Connor v. Donaldson, 422 U.S. 563, 573 & n.8, 574 (1975).

dismissed. The criminal case is remanded for further proceedings consistent with this opinion. However, the circuit court is instructed to:

1. conduct a prompt hearing to determine whether defendant is fit to proceed to trial;

2. release defendant or subject him to the civil commitment procedures delineated in HRS § 334-60 if it finds he has not regained fitness to proceed.

We believe the probable nature of defendant's disability and the lapse of a year have rendered further detention under the initial commitment order incompatible with principles of due process proclaimed in *Jackson v. Indiana.*

*Steve K. Miyasaka,* Deputy Public Defender, for defendant-appellant and petitioner.

*Wesley T. Kan,* Deputy Prosecuting Attorney, for plaintiff-appellee and respondents.