MELVIN K. McAULTON, Plaintiff-Appellee, *v.* MICHAEL
GOLDSTRIN, Defendant-Appellant, and LUCINDA L.
GOLDSTRIN and DOES 1-10, Defendants

NO. 8071

(CIVIL NO. 58524)

DECEMBER 30, 1982

RICHARDSON, C.J., LUM, NAKAMURA, PADGETT,
AND HAYASHI, JJ.

OPINION OF THE COURT BY PADGETT, J.

This is an appeal from a judgment for personal injuries and
property damages arising out of an automobile accident. The
judgment was entered pursuant to a jury verdict and appellant,
by proper motions, has preserved his claims of error. We affirm
in part and reverse in part.

The accident occurred on May 3, 1978 and the case was
tried in June of 1980. Appellee's vehicle was uninsured and he
was thus ineligible for no-fault benefits under Chapter 294,
HRS. The verdict awarded appellee $500 for medical and
hospital care, $800 for pain and suffering, $200 for loss of
wages and $3,500 in property damage.

As to the award of damages of personal injuries, appellant
argues that since appellee admittedly did not suffer sufficient
losses to equal the threshold amount under § 294-10(b) to
qualify him to sue under § 294-6(a) (2), HRS,[1] appellant's

---

[1] Appellee, at trial, testified that one reason he did not visit his doctor more often
was that he could not afford to pay his medical bills. He also testified that he was still
receiving therapy at the time of trial.

motions for a directed verdict and judgment *non obstante veredicto* should have been granted. In the light of our holding in *Joshua* v. *MTL, Inc.,* 65 Haw. 623, 656 P.2d 736 (1982), that § 294-6(a) (2) is unconstitutional as applied to persons ineligible for no-fault benefits, that point cannot be upheld.

We have examined appellant's other points with respect to the personal injury award and find no reversible error.

However, as to the property damage award, we agree with appellant's contention that it was error to permit the introduction, over objection, of appellee's testimony that he had received offers of $5,000 and $8,000 for his car prior to the accident. Such testimony, particularly in the light of the absence of any details indicating the *bona fides* of the alleged offers, lacked any probative value and was properly objected to as irrelevant. We add that it was also likely to be highly prejudicial.

Accordingly, the judgment below is affirmed in part, reversed in part and remanded for a new trial upon the issue of property damages only.

*Michael D. Tom ( Randall K. Steverson* with him on the briefs, *Goodsill Anderson & Quinn* of counsel) for appellant.

*Earle A. Partington (Schweigert & Associates* of counsel) for appellee.

DISSENTING OPINION OF NAKAMURA, J., WITH
WHOM RICHARDSON, C.J., JOINS

The court affirms that portion of the judgment covering an award of damages to plaintiff-appellee for personal injury and reverses the part covering an award for property damage. The affirmance is "[i]n the light of . . . [the] holding in *Joshua v. MTL, Inc.,* 65 Haw. 623, 656 P.2d 736 (1982), that [HRS] § 294-6(a) (2) is unconstitutional as applied to persons ineligible for no-fault benefits." For reasons given in my dissent there and more, I respectfully dissent from the affirmance of the award of damages for personal injury.

16

## I.

The court's opinion skips lightly over the facts; the implication is that they are no different from those in *Joshua* and warrant no further discussion. But the factual dissimilarities between *Joshua* and the instant case, in my opinion, preclude a ruling here that HRS § 294-6(a)(2)[1] deprives plaintiff-appellee of the equal protection of the laws for reasons advanced by the court there.

Plaintiff-appellee was involved in an automobile accident resulting in injury to himself and extensive damage to his automobile on May 3, 1978. Since he was not insured under a no-fault insurance policy as mandated by HRS § 294-8,[2] he was ineligible for the no-fault benefits described in HRS § 294-2(10). And though HRS § 294-6 abolishes the "[t]ort liability of the owner, operator or user of an insured motor vehicle," except under circumstances not present in this case, plaintiff-appellee filed suit against defendant-appellant who was the operator of an insured motor vehicle, seeking damages for personal injury as well as for property damage.[3]

---

[1] HRS § 294-6(a)(2) reads:
(a) Tort liability of the owner, operator or user of an insured motor vehicle, or the operator or user of an uninsured motor vehicle who operates or uses such vehicle without reason to believe it to be an uninsured motor vehicle, with respect to accidental harm arising from motor vehicle accidents occurring in this State, is abolished, except as to the following persons or their personal representatives, or legal guardians, and in the following circumstances:

. . . . .

(2) Injury occurs to such person in a motor vehicle accident in which the amount paid or accrued exceeds the medical-rehabilitative limit established in section 294-10(b) for expenses provided in section 294-2(10)(A) and (B).

[2] On the date of the accident, HRS § 294-8 read in relevant part:
(a)(1) No person may register any motor vehicle in this State or operate or use a motor vehicle upon any public street, road, or highway of this State at any time unless such motor vehicle is insured under a no-fault policy, containing the requirements of this chapter and pursuant to such regulations, including those determining the manner and term of proof of such insurance as the commissioner shall prescribe.

[3] HRS § 294-6 does not serve "to abolish tort liability with respect to property damage arising from motor vehicle accidents." *See* HRS § 294-6(e), formerly § 294-6(d).

Shortly before trial, however, the parties stipulated in writing that the claim for personal injury could be dismissed. But plaintiff-appellee moved thereafter to withdraw the stipulation. Despite defendant-appellant's efforts to restrict the trial to the property damage aspect of the case, the trial court directed the parties to proceed on both the personal injury and property damage claims.

The evidence adduced at trial indicates plaintiff-appellee was employed and not a recipient of public assistance when the accident occurred. The trial transcript discloses that he claimed he had incurred medical and rehabilitative expenses amounting to $662.19 as a consequence of the accident. No evidence that he had sustained a significant permanent loss of use of a part or function of his body or a permanent and serious disfigurement appears in the record. The trial transcript further reflects that plaintiff-appellee testified the damaged vehicle had been purchased for $800 and approximately $3,500 had been expended in modifying it.[4]

The jury returned a verdict awarding plaintiff-appellee these sums as damages: $3,500 for property damage, $500 for medical and rehabilitative expenses, $800 for pain and suffering, and $200 for loss of earnings. After the denial by the trial court of a Motion for Judgment Notwithstanding the Verdict

---

[4] The trial transcript reflects testimony that the sum of $4,331 was expended on the automobile by plaintiff-appellee. The following expenditures were claimed by him:

| | |
|---|---|
| 1. Purchase of Automobile | $ 800 |
| 2. Engine | 400 |
| 3. Parts for Engine | 1,000 |
| 4. Transmission | 700 |
| 5. Replacement Parts | 200 |
| 6. Rims | 180 |
| 7. Tires | 200 |
| 8. Gauges | 80 |
| 9. Mallory Distributor | 30 |
| 10. Electronic Ignition | 32 |
| 11. Black leather for interior of car | 400 |
| 12. Antenna (Receipt Attached) | 91 |
| 13. Car Stereo Speakers (Receipt Attached) | 68 |
| 14. Muffler & Parts (Receipt Attached) | 150 |
| | $4,331 |

or in the Alternative for a New Trial, defendant-appellant perfected a timely appeal to this court from the judgment reflecting the verdict.

## II.

A person to whom harm befalls from a motor vehicle accident now has no right to maintain a negligence action against the perpetrator of the harm unless he demonstrates the claim is one that has escaped the general abolition of tort liability decreed by HRS § 294-6. For legislative wisdom has ordained that the

> [t]ort liability of the owner, operator or user of an insured motor vehicle, or the operator or user of an uninsured motor vehicle who operates or uses such vehicle without reason to believe it to be an uninsured motor vehicle, with respect to accidental harm arising from motor vehicle accidents occurring in this State, is abolished, except as to the following persons or their personal representatives, or legal guardians, and in the following circumstances:
>
> (1) Death occurs to such person in such a motor vehicle accident; or injury occurs to such person which consists, in whole or in part, in a significant permanent loss of use of a part or function of the body; or injury occurs to such person which consists of a permanent and serious disfigurement which results in subjection of the injured person to mental or emotional suffering;
>
> (2) Injury occurs to such person in a motor vehicle accident in which the amount paid or accrued exceeds the medical-rehabilitative limit established in section 294-10(b) for expenses provided in section 294-2(10)(A) and (B);
>
> (3) Injury occurs to such person in such an accident and as a result of such injury the aggregate limit of no-fault benefits outlined in section 294-2(10) payable to such person are exhausted.

HRS § 294-6(a).

The trial jury found plaintiff-appellee had accrued $500 in medical and rehabilitative expenses he might otherwise have been entitled to under the No-Fault Law had he complied therewith by purchasing the prescribed insurance policy. But

the medical-rehabilitative threshold established pursuant to HRS § 294-10(b) during relevant times was $1,500. Hence, he could not have fallen within the category of persons whose personal injury claims were preserved by HRS § 294-6(a)(2) under any reading thereof. And there was no evidence that § 294-6(a)(1) or § 294-6(a)(3) saved his claim from extinction. In short, there was absolutely no showing that the circumstances surrounding the personal injury claim enabled him to prosecute it.

The situation presented to the trial court after the jury returned its verdict clearly warranted a grant of defendant-appellant's Motion for Judgment Notwithstanding the Verdict, if dismissal had not been justified earlier. The trial court's failure to heed the statutory call is ratified by the majority on grounds that the statutory roadblock to suit in HRS § 294-6(a)(2) cannot be applied to plaintiff-appellee without running afoul of the State Constitution. As in *Joshua v. MTL, Inc., supra,* I cannot believe the equal protection guaranty compels this ruling, especially when plaintiff-appellee's membership in the class the court found the No-Fault Law had subjected to unequal treatment in the earlier case is questionable at best.

### III.

The court's decision is that *Joshua v. MTL, Inc., supra,* dictates an affirmance of the portion of the judgment covering plaintiff-appellee's personal injury claim. In *Joshua,* the court examined the No-Fault Law and decided two provisions would contravene equal protection if applied to the plaintiff-appellant and those similarly circumstanced. And poverty as a *de facto* ground for divesting an accident victim of the right to sue for damages was condemned there. Implicit in the holding here is a finding that plaintiff-appellee's ineligibility for no-fault benefits was also due to an impecunious state. But the record cannot sustain a finding that he belonged to the class the court deemed disadvantaged by the law in *Joshua.*

Though the court notes plaintiff-appellee "testified that one reason he did not visit his doctor more often was that he could not afford to pay his medical bills," the record controverts a contention that poverty was the cause of his non-compliance

with the law. The evidence adduced at trial by plaintiff-appellee to establish his claim for property damage belies the averment of indigence noted by the court. For he made proof satisfying the jury that he had expended several thousand dollars to enhance the value of a motor vehicle purchased for $800 to at least $3,500. I can only infer the purchase of a compulsory no-fault insurance policy enjoyed a low priority status with plaintiff-appellee. While he spent $400 for black leather to cover the vehicle's interior, he apparently was unwilling to allocate a lesser sum to no-fault insurance.[5] When pressed during oral argument, counsel's rationalization of plaintiff-appellee's conduct in this regard was that "his [plaintiff-appellee's] one . . . joy in life was that automobile of his, which I would note for the record." His noncompliance with the No-Fault Law was a matter of choice, and I would not place him in the same category with the plaintiff-appellant in *Joshua*.

## IV.

The court's decision in *Joshua* breached precepts of judicial decision-making because the No-Fault Law was subjected to equal protection analysis although a breach of the relevant constitutional clause was not urged. These principles are violated again because *Joshua* is gratuitously extended[6] to a driver who deliberately disregarded the compulsory scheme of motor vehicle accident reparations devised by the legislature to meet a perceived need. Moreover, in affirming the part of a judgment including damages for pain and suffering, the court reaches an anomalous result; a motorist who "opts out" of the system still retains rights no longer granted those who comply with its

---

[5] Although no evidence appears in the record with respect to the cost of a basic no-fault insurance policy, I have reason to believe such policies could have been purchased during relevant times for sums ranging from $200 to $400 per annum.

[6] The plaintiff-appellee here did not seriously argue there was an equal protection violation. In fact his ultimate position was "that Chapter 294 never came into play and that the constitutional question briefed in this case need never be reached."

requisites. Thus if anyone has been treated unequally, it is the defendant-appellant; he has been held accountable for damages he would not be able to claim if he suffered harm in a vehicular accident and accrued less than the threshold sum in medical and rehabilitative expenses.

We have said "a court should 'not substitute its view of wise or fair legislative policy for that of the duly elected representatives of the people.' *Schweiker v. Wilson, supra,* 450 U.S. at 243 (Powell, J., dissenting)." *Shibuya v. Architects Hawaii, Ltd.,* 65 Haw. 26, 41, 647 P.2d 276, 286 (1982). Nor should we destroy the efficacy of a statute without compelling constitutional reasons. *State v. Raitz,* 63 Haw. 64, 72-73, 621 P.2d 352, 359 (1980). I would reverse the judgment in all respects.