DONNA WASHINGTON, Plaintiff-Appellant, *v.* FIREMAN'S FUND INSURANCE. COMPANIES, a foreign corporation, Defendant-Appellee, and STATE OF HAWAII, Defendant

NO. 9411

CIVIL NO. 8303

AND

HELENE STONE, Individually and as Next Friend to MARLO STONE, JEANETTE MAWAE, Individually and as Next Friend to JOSETTE MAWAE, ROBERTA DeMELLO, ALFRED DeMELLO, JR., Individually and as Next Friend to ROXANNE NAKAMURA, and on behalf of themselves and all those similarly situated, Plaintiffs-Appellants, *v.* STATE OF HAWAII, Defendant-Appellee

NO. 9965

CIVIL NO. 6316(2)

OCTOBER 15, 1985

LUM, C.J., NAKAMURA, HAYASHI, WAKATSUKI, JJ., AND INTERMEDIATE COURT OF APPEALS CHIEF JUDGE JAMES S. BURNS, IN PLACE OF PADGETT, J., RECUSED

OPINION OF THE COURT BY HAYASHI, J.

Article I, section 5 of the Hawaii Constitution and the Fourteenth Amendment, section 1 of the United States Constitution prohibit the denial of due process or equal protection of the laws. In these two consolidated cases, we consider whether the provisions of Hawaii Revised Statutes (hereinafter "HRS") Chapter 294 are prohibited by the Hawaii and United States Constitutions. We also must consider whether HRS § 294-2(10) provides coverage for chiropractic services and massage therapy. We answer both questions in the negative.

I.

A.

*Washington v. Fireman's Fund Insurance Co.* Plaintiff, Donna Washington (hereinafter "Washington") was issued a no-fault insurance policy at no cost by Defendant, Fireman's Fund Insurance Co. (hereinafter "Fund") pursuant to HRS § 294-24(b)(2),[1] the Hawaii Joint Underwriting Plan (hereinafter "HJUP"). Under HJUP, public assistance recipients receive free no-fault insurance policies. The cost of these policies is borne by the rest of the automobile-driving public (who pay higher no-fault insurance premiums to support the HJUP program).

---

[1]The relevant portions of the law (as written in the 1984 Supplement) are·
§ *294-24   Joint underwriting plan rates.*

. .

(b) The commissioner shall periodically set rate schedules, but not less frequently than annually, for all classes, in accordance with this part and the following criteria, so that the total premium income, from all plan motor vehicle insurance, when combined with the investment income, shall annually fund the costs of all joint underwriting plan classes, the joint underwriting assigned claims plan, and the administration of the plans. The commissioner shall establish rates for the following classes within the restrictions stated:

.   .   .

(2) For the licensed public assistance driver, as defined at section 294-22(b)(2)(A), no premium shall be assessed for the basic no-fault, the mandatory public liability or the mandatory property damage policies; and all policies shall conform to the provisions of section 294-22(b)(2) .

§ *294-22   Joint underwriting plan risks, eligibility.*

(b) The plan shall provide all no-fault benefits and services, and tort liability coverage, to the limits and coverages specified in part I for all classes of persons, motor vehicles, and motor vehicle uses specified in this section upon the payment of premiums as provided in section 294-24, as follows:

.   .   .

(2) The plan shall provide no-fault benefits and policies for all classes of persons, motor vehicles, and motor vehicle uses, at the premiums specified under section 294-24, at the options of the owners, for the following classes, which the commissioner, by rules shall further define and regulate:

(A) All licensed drivers receiving public assistance benefits consisting of medical services or direct cash payments through the department of social services and housing, or benefits from the supplemental security income program under the Social Security Administration . . . .

On February 28, 1982, Washington was injured in an automobile accident. Washington applied for benefits under the no-fault policy. Fund denied the application on the ground that the benefits are excluded by HRS § 294-2(10). Washington also applied to the Department of Social Services and Housing (hereinafter "DSSH") for medical services, but was denied coverage.

Washington filed a complaint seeking *damages* for the State of Hawaii's (hereinafter "State") and Fund's failure to pay for chiropractic and massage therapy necessitated by the automobile injuries. Fund moved for summary judgment on the ground that Washington was unentitled to benefits under HRS § 294-2(10). The trial court granted the motion, and Washington filed a timely appeal.

### B.

*Stone v. State.* All members of the class represented by Helene Stone (hereinafter "Appellants") are public assistance recipients who obtained free no-fault insurance policies under HJUP. All class members were injured in automobile accidents but were denied no-fault benefits by their insurance carrier on the ground that HRS § 294-2(10) precludes a *public aid recipient with a HJUP policy, who is injured by another public assistance recipient with a HJUP policy,* from receiving no-fault benefits. Appellants must seek Medicaid compensation from DSSH.

In 1982, Appellants instituted a class action[2] against State alleging that HRS §§ 294-2(10), 294-2(18), 294-22(b)(2) and 294-24(b)(2) unconstitutionally violate due process and equal protection guaranteed by the U.S. Const. amend XIV, § 1 and Haw. Const. art. I, § 5. Appellants claimed that State has set up an insurance system that "invidiously" discriminates by creating a class of indigents (public assistance recipients with HJUP policies who are injured in automobile accidents by other public aid recipients with HJUP policies) which is denied no-fault insurance benefits available to all other members of the no-fault insured public. Appellants primarily sought 1) an injunction requiring the

---

[2]Appellants comprise the class of HJUP policyholders injured by other HJUP policyholders. If an HJUP policyholder were injured by a regular no-fault policyholder, the injured HJUP policyholder would seek recovery from the regular policyholder's insurer and could receive no-fault benefits.

DSSH and State to order all insurance companies to pay no-fault insurance benefits to all qualified persons injured in automobile accidents regardless of whether the persons were issued a HJUP policy; and 2) a declaration that the challenged HRS sections were unconstitutional.

State moved to dismiss, or in the alternative, for summary judgment. First, State alleged that Appellants had failed to show that HRS § 294-2(10) was not a rationally based, comprehensive insurance system. Second, there were no constitutional problems since Appellants could obtain an unlimited amount of Medicaid benefits from DSSH whereas other policyholders are limited to a $15,000 ceiling on no-fault benefits (the HJUP policyholder could get *more monetary benefits* than a regularly insured person). Third, Appellants were attempting to get an undeserved windfall since they, as indigents, obtain HJUP policies at no cost and contribute nothing to medical coverage costs while other members of the vehicle driving and taxpaying public must shoulder all expenses to support the HJUP and Medicaid programs. And fourth, Act 245, 1983 Haw. Sess. Laws 518, effectively supercedes *Joshua v. MTL, Inc.,* 65 Haw. 623, 656 P.2d 736 (1982), and *McAulton v. Goldstrin,* 66 Haw. 14, 656 P.2d 96 (1982) so that Appellants have no precedents to support their claim that HRS § 294-2(10) is unconstitutional.[3]

Appellants also moved for summary judgment. First, Appellants asserted that *Joshua* was still controlling since State was, once again, illegally discriminating against the poor. Second, because Medicaid

---

[3]The relevant portions of the Act 245 are as follows:

In recent times the Hawaii supreme court, however, eroded one of the most important elements of our no-fault system, the mandatory insurance coverage of all who choose to exercise the privilege of driving. The court's decision in *Joshua v. MTL, Inc* . misread the intent of the legislature . . . .

The result of the *Joshua* and *McAulton* decisions is that the no-fault law is interpreted to provide law violators faster and easier access to the judicial system than law abiding citizens have. These decisions fly in the face of justice and public policy . . .

Accordingly, the purpose of this Act is to expressly restate, reiterate, and clarify the intent of the legislature in enacting sections 294-6(a) and 294-36(b), Hawaii Revised Statutes, concerning the barring of suits by uninsured motorists for injuries sustained in motor vehicle accidents was originally . . . .

§ 1, 1983 Haw. Sess. Laws at 520-21.

coverage from DSSH is not as extensive as no-fault benefits, HJUP policyholders are not as equally protected as regular no-fault policyholders.[4] Also, if a HJUP policholder obtained recovery from a tortfeasor, the HJUP policyholder would have to reimburse DSSH for 100% of the Medicaid payments received whereas a regular no-fault policyholder in the same situation would only be required to return a maximum of 50% of benefits received to the insurance carrier. Third, Appellants were not asking for a windfall but were simply demanding to be treated the same and receive the same benefits as regular no-fault policyholders. Finally, Appellants contended that the denial of no-fault benefits to their class was arbitrary and not rationally based.

The trial court denied Appellants' Motion for Summary Judgment and granted State's Motion for Summary Judgment on the grounds that 1) Act 245 abrogates *Joshua* and *McAulton;* 2) HRS § 294-2(10) is constitutional; and 3) the special classification of HJUP policyholders is not discriminatory. Pursuant to Hawaii Rules of Civil Procedure Rule 23(a) and (b), the trial court also certified Appellants' class action. Appellants appealed the amended final judgment entered on March 23, 1984, and the consolidation followed on December 18, 1984.

Thereafter, State filed a motion to dismiss arguing that the suit against State was barred by sovereign immunity and the provisions of HRS Chapters 661 and 662. Appellants answered that sovereign immunity is not applicable to an action seeking declaratory and injunctive relief by attacking the constitutionality of a government body's (DSSH) actions. We denied the motion to dismiss but agreed to consider the issue of sovereign immunity as an alternative ground in support of the lower court's judgment.

II.

We will consider the issues presented to us in the following order: 1) whether sovereign immunity bars this action against State; 2) whether

---

[4]The state Medicaid Administrator has testified that Medicaid will not cover chiropractic services, lost wages, massage, plastic surgery (for cosmetic reasons), private duty nursing, faith healing, naturopathic services, accupuncture, and orthodontic work. Record at 105, 123-35, 144-45.

HRS § 294-2(10) is constitutional; and 3) whether Washington has a valid claim to chiropractic services and massage therapy under HRS § 294-2(10).

This court has held that "the doctrine of sovereign immunity precludes any suit against the State without the State's express consent." *Big Island Small Ranchers Association v. State,* 60 Haw. 228, 236, 588 P.2d 430, 436 (1978) (citing *Helela v. State,* 49 Haw. 365, 369, 418 P.2d 482, 485 (1966)). And because the provisions of HRS Chapters 661 and 662 are the only instances where State has consented to be sued for damages, State argues that Appellants' "action[s] must have been brought under one of [those] two chapters or else be barred by the doctrine of sovereign immunity." *Waugh v. University of Hawaii,* 63 Haw. 117, 126, 621 P.2d 957, 965 (1980). We agree.

Although we have ruled "that *sovereign immunity may not be invoked as a defense* by state officials who comprise an executive department of government *when their action is attacked as being unconstitutional.*" *W. H. Greenwell Ltd. v. Department of Land and Natural Resources,* 50 Haw. 207, 209, 436 P.2d 527, 528 (1968) (citations omitted and emphasis added), the action in *Washington* asserted a claim for damages against State, and therefore, the doctrine of sovereign immunity applies. The present appeal does not involve an action seeking only to enjoin state officials from acting unconstitutionally. *See, e.g., Robinson v. Ariyoshi,* 65 Haw. 641, 658 n.13, 658 P.2d 287, 300 n.13 (1982); *Sotomura v. County of Hawaii,* 402 F. Supp. 95 (D. Hawaii 1975). We, however, go on to address the merits of the appeal, notwithstanding the bar of sovereign immunity.

III.

We now turn to the constitutionality of HRS § 294-2(10). Because the facts were not in dispute, one of the parties was entitled to summary judgment as a matter of law. *Fernandes v. Tenbruggencate,* 65 Haw. 226, 227, 649 P.2d 1144, 1146 (1982). We hold that the trial court correctly found that HRS § 294-2(10) is constitutional and that there is a rational basis to justify the different treatment given to Appellants.

## A.

### 1.

The principles of this case are the same as those stated in *Joshua*. Specifically, this no-fault insurance classification based on indigency is reviewed under the rational basis standard. 65 Haw. at 629, 656 P.2d at 740. *See also, Nachtwey v. Doi,* 59 Haw. 430, 438, 583 P.2d 955, 960-61 (1978). To prevail, a party challenging the constitutionality of a statutory classification on equal protection ground has the burden of showing, "with convincing clarity that the classification is not rationally related to the" statutory purpose, *State v. Bloss,* 62 Haw. 147, 154, 613 P.2d 354, 359 (1980), or that "the challenged classification does not 'rest upon some ground of difference having a fair and substantial relation to the object of the legislation,'" *Hasegawa v. Maui Pineapple Co.,* 52 Haw. 327, 330, 475 P.2d 679, 681 (1970), and is therefore "arbitrary and capricious." *State v. Freitas,* 61 Haw. 262, 272, 602 P.2d 914, 922 (1979). *See also, Schwab v. Ariyoshi,* 58 Haw. 25, 31, 564 P.2d 135, 139 (1977).

This court has ruled that:

[E]qual protection does not mandate that all laws apply with universality to all persons; the State "cannot function without classifying its citizens for various purposes and treating some differently from others." The legislature may not, however, in exercising this right to classify, do so aribitrarily. The classification must be reasonably related to the purpose of the legislation.

We set out in *Hasegawa* a two-step procedure for determining whether the statute passed constitutional muster:

First, we must ascertain the purpose or objective that the State sought to achieve in enacting [the challenged statute]. Second, we must examine the means chosen to accomplish that purpose, to determine whether the means bears a reasonable relationship to the purpose.

*Joshua,* 65 Haw. at 629, 656 P.2d at 740 (quoting *Hasegawa,* 52 Haw. at 330, 475 P.2d at 681).

### 2.

The general purpose of HRS Chapter 294 is to provide a comprehensive, mandatory system of no-fault insurance that would compensate for

accidental harm arising out of motor vehicle accidents and would limit tort liability for such accidents. *Barcena v. Hawaiian Insurance & Guaranty Co.,* 67 Haw. 97, 101, 678 P.2d 1082, 1085 (1984).

The purpose of HJUP (as embodied in HRS §§ 294-22 and 294-24) is to provide public assistance recipients, who could not otherwise afford insurance, free no-fault policies. This would enable the public assistance recipients to operate their vehicles within the no-fault system. As stated by Fund:

> The purposes or objectives . . . of limiting welfare recipients to public assistance benefits under the free policy are as follows: (1) to avoid double coverage or recovery, (2) to avoid passing the cost of the free policy on to other auto insurance buyers, and (3) to maintain the Medicaid program as the sole source of medical, rehabilitative, and lost income benefits so as not to run afoul of federal regulations, or otherwise adversely effect the federal funding shares of the program. The means chosen to accomplish the above-stated objectives provided welfare recipients with a no-cost no-fault insurance policy which would extend coverage not to welfare recipients but to those who became involved in vehicular accidents with a vehicle covered at no-cost under the HJUP. It also limited the source of medical, rehabilitative, and lost income benefits to welfare recipients injured in a vehicular accident to public assistance benefits.

Fund's Answering Brief at 14, referring to Hse. Conf. Comm. Rep. No. 39 (majority), in 1977 House Journal, at 1263-64.

There is a rational basis for treating Appellants' class differently from other no-fault policyholders. Basically, it is a *policy decision* to have public aid recipients receiving payments from DSSH to also, for administrative convenience and to stay in compliance with federal welfare regulations, receive Medicaid compensation for automotive injuries (caused by other HJUP policyholders) from DSSH. By having public aid recipients obtain *all* their payments (Medicare, Medicaid, Aid to Families with Dependent Children) from DSSH, there is no danger of a public assistance recipient receiving *double coverage* for the same damages arising out of an automotive accident — i.e. receiving medical compensation from both DSSH and a private insurance carrier. *See,* Hse. Conf. Comm. Rep. No. 39, *supra.*

With respect to HRS § 294-2(10), this court has said that *"the power to decide what the policy of the law shall be resides with the legislature;* 'and if it has intimated its will, . . . that will should be recognized and

obeyed.'" *Barcena,* 67 Haw. at 103, 678 P.2d at 1087 (emphasis added) (quoting *Johnson v. United States,* 163 F. 30, 32 (1908)). In this case there exists a reasonable state of facts to support the classification on equal protection ground and thus uphold HRS Chapter 294 and HJUP. *See, State v. Cotton,* 55 Haw. 148, 150, 516 P.2d 715, 717 (1973). The differences in treatment between persons with HJUP policies and those with regular policies are not unconstitutional.

As noted earlier, although there are some medical services that Medicaid does not cover though no-fault does, Appellants (who receive their insurance policies at no cost) can receive potentially unlimited Medicaid benefits whereas regular no-fault policyholders are subject to a $15,000 ceiling. Thereafter, regular no-fault policyholders must sue in tort under HRS § 294-6 to recover additional damages.

Appellants, moreover, do have the same tort remedies as all other policyholders possess. *Nothing* in HRS §§ 294-6, 294-2(10), 294-22, and 294-24 precludes any public aid recipient from suing in tort once the $15,000 ceiling is reached — or if any of the exceptions in HRS § 294-6 apply.[5] Even though, in event of a tort recovery, DSSH must be reimbursed for 100% of all Medicaid payments received while a private insurer must be subrogated for only 50% of all benefits obtained, HJUP can be justified on rational grounds. Because the *automobile insurance buying and taxpaying public support the HJUP and Medicaid program,* it is only fair and logical that the public aid recipient (who got the HJUP policy free) should be required to reimburse DSSH for all the benefits payed for by public money. A regular no-fault policyholder who has had to pay premiums out of his or her own pocket to retain insurance coverage and subsequently obtains a tort recovery is in a vastly different situation.

"[E]qual protection . . . is not an obligation to provide the best governance possible," and there is no constitutional demand "that a statute necessarily apply equally to all persons." *Shibuya v. Architects Hawaii, Ltd.,* 65 Haw. 26, 35, 647 P.2d 276, 283 (1982). Even though some medical services are available to regular no-fault policyholders

---

[5]Under HRS § 294-6(a)(1) (Supp. 1984), death, significant permanent loss of use of a part or function of the body, or serious disfigurement which result in subjection of the injured person to mental or emotional suffering does away with the partial abolition of tort liability.

and not to public aid recipients under Medicaid (see footnote 4, *supra*), the disparity is not so great as to amount to a denial of equal protection. The means chosen under HRS Chapter 294 to accomplish the statutory purpose do bear a reasonable relationship to the purpose: public assistance recipients can obtain free no-fault insurance and medical benefits to compensate from accidental harm and to limit tort liability arising from motor vehicle accidents. *See Barcena.*

This is unlike the case in *Joshua,* or *McAulton,* where uninsured claimants had been denied any medical benefits because of the unconstitutional statute in effect at the time. Here, Appellants do receive full Medicaid benefits and are simply precluded from obtaining particular types of medical services from a private insurer. Therefore, *Joshua* and *McAulton* are not controlling since the different treatment here does not rise to an equal protection violation.

### B.

This court has ruled that "the enactment of laws is the prerogative of the legislature and it is not for the judiciary to second-guess the legislature or substitute its judgment for that of the legislature." *Cotton,* 55 Haw. at 151, 516 P.2d at 718. Because no fundamental rights or suspect classifications are involved, *Joshua,* 65 Haw. at 629, 656 P.2d at 740, the rational basis standard is used. Only if there is no rational basis to sustain the challenged statutes will there be a violation of due process under U.S. Const. amend. XIV and Haw. Const. art. I, § 5. *Daoang v. Department of Education,* 63 Haw. 501, 507-08, 630 P.2d 629, 633 (1981); *Nagle v. Board of Education,* 63 Haw. 389, 403-04, 629 P.2d 109, 118-19 (1981).

Although there may be some situations where a statutory classification may be so unjustifiable as to violate due process, *United States v. Ah Yun,* 371 F. Supp. 668, 669 (D. Hawaii 1974),[6] the present appeal does not involve such a classification. As previously discussed, the challenged statutory provisions have a rational basis. Therefore, the

---

[6]*Ah Yun* applied the U.S. Const. amend. V which contains no equal protection clause. *See also, HC&D Moving & Storage Co. v. United States,* 298 F. Supp. 746, 751 (D. Hawaii 1969), *motion denied,* 317 F. Supp. 881 (D. Hawaii 1970) (due process is violated if there is arbitrary agency treatment of similarly situated persons).

trial court did not err in granting summary judgment in *Stone* on the basis that the HJUP provisions of HRS Chapter 294 are constitutional.

## IV.

We finally turn to the issue whether the trial court in *Washington* properly granted summary judgment to Fund. We hold that the trial court ruled correctly.

## A.

The sole issue before the trial court and this court has been the interpretation of HRS § 294-2(10) (Supp. 1984). HRS § 294-2(10) (Supp. 1984) states:

"No-fault benefits" with respect to any accidental harm shall be subject to an aggregate limit of $15,000 per person or his survivor and means:

(A) All appropriate and reasonable expenses necessarily incurred for medical, hospital, surgical, professional nursing, dental, optometric, ambulance, prosthetic services, products and accommodations furnished, x-ray and may include any non-medical remedial care and treatment rendered in accordance with the teachings, faith or belief of any group which depends for healing upon spiritual means through prayer;

(B) All appropriate and reasonable expenses necessarily incurred for psychiatric, physical, and occupational therapy and rehabilitation;

(C) Monthly earnings loss measured by an amount equal to the lesser of:

(i) $800 per month, or

(ii) The monthly earnings for the period during which the accidental harm results in the inability to engage in available and appropriate gainful activity.

(D) All appropriate and reasonable expenses necessarily incurred as a result of such accidental harm, including, but not limited to, (i) expenses incurred in obtaining services in substitution of those that the injured or deceased person would have performed not for income but for the benefit of himself or his family up to $800.

per month, (ii) funeral expenses not to exceed $1,500, and (iii) attorney's fees and costs to the extent provided in section 294-30(a); provided that the term, when applied to a no-fault policy issued at no cost under the provisions of section 294-24(b)(2), shall not include benefits under subparagraphs (A), (B), and (C) for any person receiving public assistance benefits.

Anyone receiving public assistance benefits that is issued a no-fault policy at no cost under HRS § 294-24(b)(2) cannot claim benefits described in subsections A, B and C. Fund claims that chiropractic and massage therapy falls under A and B.[7] Washington claims that the therapy is covered by D. Chiropractic and massage therapy could be covered by either subsection B or D.[8]

Subsection D covers "[a]ll appropriate and reasonable expenses necessarily incurred as a result of" the accident. There is no question that the therapy is a reasonable expense incurred as a result of the accident. Therefore the therapy appears to be covered by subsection D. The therapy also appears to be covered by subsection B, physical and occupational therapy and rehabilitation. Physical therapy is defined by *Webster's Third New International Dictionary* 1707 (unabridged ed. 1967) as, "the treatment of disease by physical and mechanical means (as massage, regulated exercise, water, light, heat, electricity)." *Webster's* also defines chiropractic as, "a system of healing . . . employing treatment by *scientific manipulation and specific adjustment* of body struc-

---

[7]Fund points to several insurance commissioners' rulings to support its view that the therapy is covered by subsections A and B. However, each of these cases dealt with whether a no-fault insurer was liable for coverage based on a purchased no-fault policy. In these cases, unlike the case at bar, it did not matter which subsection coverage was grounded, so long as it was covered by A, B, C or D. Thus, these cases are marginally persuasive, but not compelling.

[8]Fund relies on subsection A based on the phrases, "medical . . . services" and "any non-medical remedial care and treatment rendered in accordance with the teachings, faith or belief of any group which depends for healing upon spiritual means through prayer." Fund claims that this phrase should be repunctuated so that a comma or semicolon followed "remedial care." The phrase Fund would then rely upon would be "any non-medical remedial care." However, Fund does not point to any authority for construing the phrase any differently than it was written. Since the phrase is clear and unambiguous as written, this court need not repunctuate it. *See In re Hawaiian Telephone Co.,* 61 Haw. 572, 577-78, 608 P.2d 383, 387 (1980). The term "medical . . . services" also seems a little too narrow to cover the therapy. In any event, between subsection A and B, subsection B comes closer to covering chiropractic and massage therapy.

tures (as the spinal column) and utilizing *physical therapy* when necessary." *Id.* at 392 (emphasis added). Thus, it appears that both subsections B and D cover the therapy.

### B.

We rule, however, that chiropractic services and massage therapy are covered by subsection B of HRS § 294-2(10). Under HRS § 442-1 (1976):

> Chiropractic is defined to be the *science of palpating and adjusting the articulations of the human spinal column by hand only;* provided that the practice of chiropractic as contemplated and set forth in this chapter shall not exclude the use of any method or means, or any agent, either tangible or intangible, for the treatment of disease in the human subject; subject to the restrictions contained in this chapter; and provided further, that the practice of chiropractic as contemplated and set forth in this chapter shall not include the practice of lomilomi or massage.

(Emphasis added.) We also note that chiropractors are not licensed medical doctors and cannot perform medical services such as the administering of drugs, surgery, osteopathy, dentistry, or optometry. HRS § 442-8 (Supp. 1984).

Massage or "Hawaiian lomilomi" is subject to a licensing scheme similar to chiropractic services.[9] HRS Chapter 452 (Supp. 1984). Massage or Hawaiian lomilomi has been defined as a form of "*therapy* of the superficial soft parts of the body . . . [by] *rubbing, stroking, tapping, pressing, shaking, or kneading with the hands, feet, or elbow* [of the masseur or masseuse] . . . ." HRS § 452-1(2) (Supp. 1984) (emphasis added).

The logical conclusion is that both chiropractic services and massage therapy, licensed under similar statutory schemes and so alike in definition and practice, must be considered "therapy" within the meaning of HRS § 294-2(10)(B). Chiropractic services and massage therapy have

---

[9]Under HRS Chapters 442 and 452 (Supp. 1984), practitioners of chiropractic services and massage therapy must be licensed and certified by separate state boards. Furthermore, all persons desiring to practice in either one of the two occupations must submit to an examination by the respective state boards.

recognized therapeutic and rehabilitative value under the statutes.

Having ascertained that the legislative intent was to define chiropractic services and massage therapy as "therapy" within the meaning of HRS § 294-2(10)(B), we, therefore, must implement that intention to the fullest degree. *See, Kaiama v. Aguilar,* 67 Haw. 549, ___, 696 P.2d 839, 842 (1985). The legislature clearly intended to exclude chiropractic services and massage therapy from the scope of HJUP, public assistance no-fault insurance coverage. The trial court, therefore, committed no error in denying Washington's claim for benefits under HRS § 294-2(10).

Affirmed.

*Nathan Sult, (David L. Turk* with him on the briefs; *Turk and Agena,* of counsel) for plaintiffs-appellants Washington and Stone, et al.

*Stephen K. Chang,* Deputy Attorney General, for defendant-appellee State of Hawaii.

*Alan K. Nii, (Carleton B. Reid, Douglas H. Knowlton* on the brief in No. 9411, and *Carleton B. Reid* with him on the brief in No. 9965; *Davis, Reid & Richards,* of counsel) for defendant-appellee Fireman's Fund Insurance Companies.